7 U.S. 159
 3 Cranch 159
 2 L.Ed. 397
 UNITED STATES
v.
BENJAMIN MORE.[1]
 February Term, 1805
 
 ERROR to the circuit court of the district of Columbia, sitting at Washington, upon a judgment in favour of the traverser, on a demurrer to an indictment for taking unlawful fees as a justice of the peace for the county of Washington.
 The indictment was as follows, viz. 'United States, District of Columbia and County of Washington, to wit.
 'The jurors for the United States, for the district of Columbia, and county of Washington, aforesaid, upon their oath present, that Benjamin More, late of the county of Washington, aforesaid, gentleman, on the 10th day of December, in the year of our Lord one thousand eight hundred and two, then being one of the justices of the peace of the United States, for the county of Washington aforesaid, at the county of Washington aforesaid, by colour of his said office, unlawfully and unjustly did demand, extort, receive and take, of and from one Richard Spalding, constable, acting for and on behalf, of one Joseph Hickman, the sum of twelve cents, and a half cent, lawful current money of the United States, for and as his fee, for executing and doing the duties of his said office, to wit, for rendering and giving judgment upon a warrant for a small debt, in a case between the said Joseph Hickman, plaintiff, and one Joseph Dove, defendant, in contempt of the law, to the great damage of them, the said Richard Spalding, and Joseph Hickman, and against the peace and government of the United States.
 'JOHN T. MASON, United States Attorney, for the district of Columbia.'To this indictment, there was a general demurrer and joinder, and judgment in the court below for the traverser, at July Term, 1803.[2]
 Mason, attorney for the United States for the district of Columbia. The act of congress of February 27, 1801, § 11, vol. 5, p. 271, declares, 'that thereshall be appointed in and for each of the said counties, (in the district of Columbia) such number of discreet persons, to be justices of the peace, as the president of the United States shall, from time to time, think expedient, to continue in office five years. And such justices, having taken an oath for the faithful and impartial discharge of the duties of the office, shall, in all matters civil and criminal, and in whatever relates to the conservation of the peace, have all the powers vested in, and shall perform all the duties required of justices of the peace, as individual magistrates, by the laws herein before continued in force in those parts of said district for which they shall have been respectively appointed; and they shall have cognizance in personal demands to the value of 20 dollars, exclusive of costs, which sum they shall not exceed, any law to the contrary notwithstanding; and they shall be entitled to receive for their services, the fees allowed for like services by the laws herein before adopted and continued in the eastern part of said district.'
 By the 4th section of the act of congress of 3d March, 1801, vol. 5, p. 288, the magistrates are constituted a board of commissioners, with certain duties and fees annexed to that office. And by the act of 3d of May, 1802, vol. 6, p. 181, § 8, it is enacted, 'that so much of two acts of congress, the one passed on the 27th of February, 1801, entitled, 'An act concerning the district of Columbia,' the other passed the 3d day of March, 1801, supplementary to the aforesaid act, as provides for the compensation to be made to certain justices of the peace thereby created,' 'shall be, and the same is hereby repealed.' The question for the decision of this court is, whether congress had a constitutional right thus to abolish the fees.
 Jones, contra. By the act of 1801, certain fees were annexed to the office of justice of the peace. The traverser was appointed under that act, and while the fees were thus annexed.[3] The principle we contend for is, that he was a judge of an inferior court of the United States, and protected by the third article of the constitution, which declares, that 'the judges, both of the supreme and inferior courts, shall hold their offices during good behaviour, and shall, at stated times, receive for their services, a compensation which shall not be diminished during their continuance in office.'
 A law for abolishing the fees can only affect those justices who have been appointed since the passage of that law.
 It has been decided in this court, in the case of Marbury v. Madison, (ante, vol. 1, p. 162.) that a justice of the peace in the district of Columbia does not hold his office at the will of the president.
 The power to make laws is expressly given; the power to epeal is not, but necessarily follows. So the power of appointment necessarily implies the power of removal, according to the maxim, cujus est dare, ejus est disponere. This principle was settled in congress in the year 1789, after long debate upon the tenure of office of secretary of state, and was expressed by means of a clause in the law directing what officer should take charge of the papers in that department, when the secretary of state should be removed by the president. Congress has no power to limit the tenure of any office to which the president is to appoint, unless in the case of a judge under the constitution. The position for which we contend is justified by principle. The jurisdiction given to a justice of the peace, makes him a judge of an inferior court. Lord Coke defines a court to be a place where justice is judicially administered; and this definition is recognised by Blackstone. Certain powers are incident to all courts, as to commit for contempts in court; for there is difference between courts of record, and courts not of record, as to contempts out of court.
 By the act of 1801, the justices of the peace are to have the same powers, in all matters, civil and criminal, as were exercised by the justices of the peace in Maryland. In resorting to the Maryland code of laws, we find a very early act of assembly, which gives to justices of the peace the power of punishing contempts in their presence. Indeed, they possess a vast accumulation of powers. They may inflict whipping, imprisonment, and fine as high as 500 pounds of tobacco. They have a much more extensive jurisdiction than many more regular courts. They have cognizance of civil controversies of the value of 20 dollars. They hold courts, they try causes, they give judgments, and issue executions. Every one who consults the index to the laws of Maryland, must be satisfied that the justices of the peace constitute very important tribunals, and it is immaterial by what name they are called; they administer justice judicially; they have, therefore, the power to hold a court. The traverser was appointed before the repeal. He had a compensation, which is taken away by the repeal. It is, therefore, so far unconstitutional. It is no objection that the tenure of office is limited to five years. It is not the tenure, but the essence and nature of the office which is to decide this question. If the limitation to five years makes a difference, it would be an evasion of the constitution. But it is of no consequence how congress have determined the tenure. It is established by the constitution.
 Mason, in reply. The constitution does not apply to this case. The constitution is a compact between the people of the United States in their individual capacity, and the states in their political capacity.
 Unfortunately for the citizens of Columbia, they are not in either of these capacities.
 The 2d section of the third article of the constitution declares, that 'the judicial power of the United States shall extend to all cases in law and equity, arising under this constitution, the laws of the United States and treaties made, or which shall be made under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states; between a state and citizens of another state; between citizens of different states; between citizens of the same state claiming lands under grants of different states; and between a state and the citizens thereof, and foreign states, citizens or subjects.'
 The judicial power of the United States can only extend to the cases enumerated; but the judicial power exercised in the district of Columbia, extends to other cases, and, therefore, is not the judicial power of the United States. It is a power derived from the power given to congress to legislate exclusively in all cases whatsoever over the district. And it is under this clause of the constitution that congress have created justices of the peace and given them power. Congress are under no controul in legislating for the district of Columbia. Their power, in this respect, is unlimited. If congress cannot limit the tenure of the office, but it must be during good behaviour, then a law might be passed without the concurrence of the legislative will.
 I understand the case of Marbury v. Madison to have decided only that the justices held during good behaviour for five years under the law; and not generally during good behaviour, under the constitution.
 The general provisions of the constitution do not apply to our case. We are the people of congress. They are to legislate for us, and to their laws we must submit.
 Jones. The executive power exercised within the district of Columbia is the executive power of the United States. The legislative power exercised in the district is the legislative power of the United States.—And what reason can be given why the judicial power exercised in the district should not be the judicial power of the United States? If it be not the judicial power of the United States, of what nation, state or political society is it the judicial power? All the officers in the district are officers of the United States.
 By the 2d section of the third article of the constitution, the judicial power of the United States is to extend to all cases arising under the laws of the United States. All the laws in force in the district are laws of the United States, and no case can arise which is not to be decided by those laws. What judicial power is that which is exercised by the circuit court of the district? They certainly exercise a very respectable part of the judicial power of the United States. Was it ever contended, that congress could limit the tenure of the offices of the judges of that court? or that the judges were not liable to impeachment under the constitution?
 February 13.
 The Chief Justice suggested a doubt whether the appellate jurisdiction of this court extends to criminal cases.
 
 February 22.
 
 1
 Mason, in support of the appellate jurisdiction of this court in criminal cases.
 
 
 2
 By the 1st section of the third article of the constitution, the judicial power of the United States is vested in one supreme court, and in such inferior courts as the congress may, from time to time, ordain and establish.
 
 
 3
 By the 2d section it is extended to all cases in law and equity arising under the laws of the United States. This is a case in law arising under the laws of the United States, and is, therefore, within that section.
 
 
 4
 'In all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be party, the supreme court shall have original jurisdiction. In all the other cases before-mentioned, the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations, as the congress shall make.'Congress has made no exception of criminal cases. I understand it to have been said by this court, that it is necessary that congress should have made a regulation to enable this court to exercise its appellate jurisdiction. Upon this point I consider myself bound by the case of Clarke v. Bazadone, ante, vol. 1. p. 212. It is clear, then, that this court has the jurisdiction, and the only question is, whether congress has made such a regulation as will enable this court to exercise it.
 
 
 5
 Such a regulation is contained in the 14th section of the judiciary of 1789, vol. 1. p. 58, 59, which enacts, 'that all the before-mentioned courts of the United States shall have power to issue writs of scire facias, habeas corpus, and all other writs, not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law.' The writ of error in a criminal case is a writ not provided for by statute, and necessary for the exercise of the appellate jurisdiction given to the supreme court by the constitution, and agreeable to the principles and usages of law. This court has, therefore, the power to issue it.
 
 
 6
 There is no reason why the writ of error should be confined to civil cases. A man's life, his liberty, and his good name, are as dear to him as his property; and inferior courts are as liable to err in one case as in the other. There is nothing in the nature of the cases which should make a difference; nor is it a novel doctrine that a writ of error should lie in a criminal case. They have been frequent in that country from which we have drawn almost all our forms of judicial proceedings.
 
 
 7
 It is true, that it is expressly given by the act of congress of 1789, in civil cases only, but it does not thence follow that it should be denied in criminal.
 
 
 8
 MARSHALL, Ch. J. If congress had erected inferior courts, without saying in what cases a writ of error or appeal should lie from such courts to this, your argument would be irresistible; but when the constitution has given congress power to limit the exercise of our jurisdiction, and to make regulations respecting its exercise; and congress, under that power, has proceeded to erect inferior courts, and has said in what cases a writ of error or appeal shall lie, an exception of all other cases is implied. And this court is as much bound by an implied as an express exception.
 
 
 9
 Mason. When legislating over the district of Columbia, congress are bound by no constitution. If they are, they have violated it by not giving us a republican form of government. The same observation will also apply to Louisiana.
 
 
 10
 The act of congress which gives a writ of error to the circuit court of this district, differs, in some respects, from that which gives the writ of error to the other courts of the United States.
 
 
 11
 The words of the judiciary act of 1789, section 22, are, 'and upon a like process, (that is, by a writ of error, citation, &c.) may final judgments and decrees in civil actions, and suits in equity in a circuit court,' &c. 'be reversed or affirmed in the supreme court.'
 
 
 12
 But in the law concerning the district of Columbia, § 8, vol. 5, p. 270, the expressions are, 'that any final judgment, order, or decree in said court, wherein the matter in dispute, exclusive of costs, shall exceed the value of one hundred dollars, may be re-examined, and reversed or affirmed in the supreme court of the United States, by writ of error or appeal, which shall be prosecuted in the same manner, under the same regulations, and the same proceedings shall be had therein, as is, or shall be provided in the case of writs of error on judgments, or appeals upon orders or decrees rendered in the circuit court of the United States.'
 
 
 13
 In this section, if the words respecting the value of the matter in dispute, were excluded, a writ of error would clearly lie in a criminal case, under the general expression, any final judgment. Then do those words respecting the value, exclude criminal cases? Suppose the court below had imposed a fine of more than 100 dollars, the case would have been within the express words of the act. So it would have been, if a penalty of more than 100 dollars had been imposed by law.
 
 
 14
 But this court has exercised appellate jurisdiction in a criminal case. United States v. Simms, ante, vol. 1, p. 252.
 
 
 15
 MARSHALL, Ch. J. No question was made, in that case, as to the jurisdiction. It passed sub silentio, and the court does not consider itself as bound by that case.
 
 
 16
 Mason. But the traverser had able counsel, who did not think proper to make the objection.
 
 March 2.
 
 17
 MARSHALL, Ch. J.[4] delivered the opinion of the court as follows:
 
 
 18
 This is an indictment against the defendant, for taking fees, under colour of his office, as a justice of the peace in the district of Columbia.
 
 
 19
 A doubt has been suggested respecting the jurisdiction of this court, in appeals on writs of error, from the judgments of the circuit court for that district, in criminal cases; and this question is to be decided before the court can inquire into the merits of the case.
 
 
 20
 In suport of the jurisdiction of the court, the attorney-general has adverted to the words of the constitution, from which he seemed to argue, that as criminal jurisdiction was exercised by the courts of the United States, under the description of, 'all cases in law and equity arising under the laws of the United States,' and as the appellate jurisdiction of this court, was extended to all enumerated cases, other than those which might be brought on originally, 'with such exceptions, and under such regulations, as the congress shall make,' that the supreme court possessed appellate jurisdiction in criminal, as well as civil cases, over the judgments of every court, whose decisions it would review, unless there should be some exception or regulation made by congress, which should circumscribe the jurisdiction conferred by the constitution.
 
 
 21
 This argument would be unanswerable, if the supreme court had been created by law, without describing its jurisdiction. The constitution would then have been the only standard by which its powers could be tested, since there would be clearly no congressional regulation or exception on the subject.
 
 
 22
 But as the jurisdiction of the court has been described, it has been regulated by congress, and an affirmative description of its powers must be understood as a regulation, under the constitution, prohibiting the exercise of other powers than those described.
 
 
 23
 Thus the appellate jurisdiction of this court, from the judgments of the circuit courts, is described affirmatively. No restrictive words are used. Yet it has never been supposed, that a decision of a circuit court could be reviewed, unless the matter in dispute should exceed the value of 2,000 dollars. There are no words in the act restraining the supreme court from taking cognizance of causes under that sum; their jurisdiction is only limited by the legislative declaration, that they may re-examine the decisions of the circuit court, where the matter in dispute exceeds the value of 2,000 dollars.
 
 
 24
 This court, therefore, will only review those judgments of the circuit court of Columbia, a power to reexamine which, is expressly given by law.
 
 
 25
 On examining the act, 'concerning the district of Columbia,' the court is of opinion, that the appellate jurisdiction, granted by that act, is confined to civil cases. The words, 'matter in dispute,' seem appropriated to civil cases, where the subject in contest has a value beyond the sum mentioned in the act. But, in criminal cases, the question is the guilt or innocence of the accused. And although he may be fined upwards of 100 dollars, yet that is, in the eye of the law, a punishment for the offence committed, and not the particular object of the suit.
 
 
 26
 The writ of error, therefore, is to be dismissed, this court having no jurisdiction of the case.[5]
 
 
 
 [1]
 Present, Marshall, Ch. J. Cushing, Paterson, Chase, Washington, and Johnson, Justices.
 
 
 [2]
 In the court below, the opinions of the judges were delivered to the following effect.
 CHANCH, J. The question to be decided upon this demurrer is, whether the act of congress, for abolishing the fees of justices of the peace, in the district of Columbia, can affect those justices who were in commission before, and at the time when that act passed, and who accepted their commissions, while those fees were legally annexed to the office.
 The points made in the argument of this cause, are important, and some of them, not altogether clear of doubt.
 It has been contended, that congress, in legislating for the district of Columbia, are not bound by any of the prohibitions of the constitution.
 But this is a doctrine to which I can never assent. Can it be said, that congress may pass a bill of attainder for the district of Columbia? That congress may pass laws ex post facto in the district, or order soldiers to be quartered upon us in a time of peace, or make our ports free ports of entry, or lay duties upon our exports, or take away the right of trial by jury, in criminal prosecutions?
 Yet, all this they may do, if, in legislating for the district of Columbia, they are not restricted by the express prohibitions of the constitution. The words must be positive and strong indeed, to justify such a construction. The only clause from which such an inference can possibly seem to flow, is that which says, 'congress shall have power to exercise exclusive legislation in all cases whatsoever, over such district,' &c.
 But the whole instrument is to be taken together, and every part is to be made consistent with the residue, if possible. That congress may legislate, 'in all cases whatsoever, over such district,' &c. is the general proposition, and the prohibitions are the exceptions. The true construction is, that congress may legislate for us, in all cases where they are not prohibited by other parts of the constitution. The express commands of the constitution operate as prohibitions of every thing repugnant to such commands. In every case, therefore, where congress are not bound, either by the commands or prohibitions of the constitution, they have a discretionary power to legislate over the district.
 The constitution was made for the benefit of every citizen of the United States, and there is no such citizen, whatever may be his condition, or wherever he may be situated within the limits of the territory of the United States, who has not a right to the protection it affords.
 If congress are bound by the constitution in legislating for this district, then it becomes proper to test the validity of their legislative acts, respecting the district, by the provisions of the constitution.
 The 3d article of the constitution, provides for the independence of the judges of the courts of the United States, by certain regulations; one of which is, that they shall receive, at stated times, a compensation for their services, which shall not be diminished during their continuance in office.
 The act of congress, of 27th of February, 1801, which constitutes the office of justices of the peace, and empowers them to try personal demands, of the value of 20 dollars, ascertains the compensation which they shall have for their services in holding their courts, and trying those causes. This compensation is given in the form of fees, payable when the services are rendered. The causes of which they have cognizance, are causes arising under the laws of the United States, and, therefore, the power of trying them, is part of the judicial power mentioned in the 3d article of the constitution, which expressly declares, that the judicial power of the United States, shall extend to all cases arising under those laws.
 It is difficult to conceive how a magistrate can lawfully sit in judgment, exercising judicial powers, and enforcing his judgments by process of law, without holding a court. I consider such a court, thus exercising a part of the judicial power of the United States, as an inferior court, and the justice of the peace as the judge of that court. It is unnecessary in this cause to decide the question, whether, as such, he holds his office during good behaviour; but that his compensation shall not be diminished during his continuance in office, seems to follow as a necessary consequence from the provisions of the constitution. It has been contended, that the compensation of a justice of the peace is not within this provision of the constitution, because the act of congress has not appointed the stated times at which it shall be paid. It is true, that the act of congress has not said that the compensation shall be paid on any particular day, and month; but it may, perhaps, be a compliance with the clause of the constitution, which requires that it shall be receivable at stated times, to say that it shall be paid when the service is rendered. And, we are rather to incline to this construction, than to suppose the command of the constitution to have been disobeyed.
 If, therefore, the constitution of the United States is obligatory upon congress, when legislating for this district; if a justice of the peace is a judge of an inferior court of the United States; and, if his compensation has once been fixed by law, a subsequent law for diminishing that compensation (a fortiori for abolishing it) cannot affect that justice of the peace during his continuance in office; whatever effect it may have upon those justices who have been appointed to office since the passing of the act.
 MARSHALL, J. concurred.
 KILTY, Ch. J. This is an indictment at common law, against the defendant, a justice of the peace, for having, under colour of his office, exacted and taken an illegal fee, as therein described.
 The demurrer admits his being a justice, and the exaction and receipt of the fee, and rests the defence on the legality of such conduct.
 The legality of exacting and taking fees, under colour of a public office, must depend on the express authority of law, and, therefore, the question must turn upon the acts which have passed on this subject, as it respects the district of Columbia.
 The justices of the peace were allowed expressly to receive fees for their services, by the act of February, 1801, section 11, and by the 4th section of the act of March, 1801, they were, as commissioners, entitled to certain fees and emoluments.
 It is possible, that if the 11th section had only provided for the appointment of justices, without speaking of their fees, the 1st section, adopting the laws of the two states, might have had the effect of giving them the fees provided by the laws of Maryland. But an inquiry into this part of the subject is not important, because, as it has been observed in the course of the argument, so much of those two acts as provides for the compensation to the justices, is repealed by the act of May, 1802; and it is not material to determine by which of the sections the provision was made.
 The act of 1802, section 8, having positively declared, that this provision was repealed, and having thereby left no power existing to demand the fees before allowed, it remains only to examine into the ground on which the latter act is alleged to be unconstitutional and void.
 According to the course which has been pursued by the supreme court, it appears unnecessary to say any thing about the power of a court to examine into the constitutionality of a law, until a case has been made out to justify such an inquiry. But, taking the power for granted, we are to inquire how it is called for in the present instance.
 In testing an act of the legislature by the constitution, nothing less than the positive provisions of the latter can be resorted to, and without absolute restriction by the constitution, the legislative power is omnipotent over subjects submitted to it. We must, therefore, reject the idea of judging this act on the principles of a contract, and setting it aside as an infraction of such contract.
 In support of the position, that the act of May, 1802, is unconstitutional and void, the following arguments have been urged:
 1. That a justice is a judicial officer.
 2. That a justice is a court.
 3. That a justice shall receive for his services a compensation, which shall not be diminished during his continuance in office; and that, therefore, taking away his fees, by repealing the act which gave them, is diminishing his compensation, and is contrary to the constitution.
 The nature of some of the duties confided to a justice of the peace may make him a judicial officer; and he might even be admitted to be a court, without bringing him within the provisions of the constitution. The first section of the third article speaks of the judicial power of the United States. It declares what courts it shall be vested in, and then provides, that the judges of such courts shall hold their offices during good behaviour, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office.
 When we consider this instrument as constituting a general government, and defining, amongst others, its judicial power, we must take it in its most extensive sense, as applying to the whole of the United States, and not to a particular territory.
 I consider, therefore, that the judicial power given to the traverser, as a justice of the peace, is not, in the sense of the constitution, the judicial power of the United States; and that such justice is not such a court as is provided for in the article and section in question. The justice does not, according to that article and section, hold his office during good behaviour; nor can the power of receiving certain fees, which was given by the act of 1801, be strained to mean 'receiving at stated times a compensation for his services.'
 The second section of the third article declares what subjects the judicial power, given by the first section, shall extend to. And by comparing these subjects with those which are cognizable by the justice in the present case, it will confirm the position, that this judicial power is not that of the United States, and is not provided for by this part of the constitution.
 Congress, in organising the judiciary according to the constitution, have created a supreme court, and inferior courts. Some of the latter extend over certain circuits composed of different states, and others are confined to the respective states; but in all of them, it is the judicial power of the United States which is carried into effect.
 I consider this judicial power as being different in its object and nature from that which may be the effect of the legislative power given to congress over this territory, or of their power to make rules, &c. for such places as may become their property.
 In order to show that the restrictions contained in the first section of the third article of the constitution do not extend to a justice in the district of Columbia, it may be necessary to make some inquiry into the principles on which the district is erected.
 Without endeavouring to solve all the difficulties which have been mentioned in the course of the argument, I am persuaded that the following positions are correct:—That the district of Columbia, though belonging to the United States, and within their compass, is not, like a state, a component part, and that the provisions of the constitution, which are applicable particularly to the relative situation of the United States and the several states, are not applicable to this district.
 That the power of congress to legislate for the district arises from the positive direction of the constitution, in the 8th section of the first article; and it may be here material to attend to the words 'exclusive legislation,' and to discover their meaning and origin.
 By the constitution, the legislative power of congress is confined to certain objects, and leaves to the several states a portion of the legislative power which they before possessed. But it was the intention of the framers of the constitution, to divest the ten miles square of the privileges of a state, and to give to congress the whole and exclusive power of legislation, as well on the subjects which had been left to the states, as on those which had been taken from them and given to the general government—That the ten miles square is not in a situation to become a state without an amendment in the constitution, and therein differs from the other territories belonging to the United States—That the word exclusive meaning only free from the power exercised by the several states, the legislative power to be exercised by congress may still be subject to the general restraints contained in the constitution, though it includes subjects both of a general and local nature. Thus they are restrained from suspending the writ of habeas corpus, unless in the cases allowed; from passing (within and for the district) a bill of attainder, or ex post facto law; from laying therein a capitation tax; from granting therein any title of nobility; from making therein a law respecting the establishment of religion, or abridging the freedom of speech, or of the press; and from quartering soldiers therein, contrary to the third amendment.
 But when congress, in exercising exclusive legislation over this territory, enact laws to give or to take away the fees of the justices of the peace, such laws cannot be tested by a provision in the constitution, evidently applicable to the judicial power of the whole United States, and containing restrictions which cannot, in their nature, affect the situation of the justices, or the nature of the compensation.
 However ingeniously the question has been argued, I cannot feel any doubt in my mind on it. Nor can I perceive any legal or justifiable ground under which the direction of the act of 1802 has been disregarded. I am, therefore, of opinion, that the judgment on the demurrer should be for the United States.
 But the judgment of the court is for the defendant.
 
 
 [3]
 This fact does not appear in the record, but it was agreed by the counsel on both sides, that the record should be so amended as to bring the whole merits of the cause before the court.
 
 
 [4]
 Johnson, Justice, was absent when this opinion was delivered.
 
 
 [5]
 See the case of the United States v. La Vengeance, 3 Dall. 297, where it seems to be admitted, that in criminal cases the judgment of the inferior court is final.