*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――――

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

          *v.*                                          Nos. 09-1410/1412

SEBASTIAN LUCIDO,
                              *Defendant-Appellant.*

―――――――――――――

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 92-80152-009—Nancy G. Edmunds, District Judge.
No. 93-81310-003—Paul D. Borman, District Judge.

Argued: June 10, 2010

Decided and Filed: July 28, 2010

Before:  BATCHELDER, Chief Judge; SUTTON and KETHLEDGE, Circuit Judges.

―――――――――――――

## COUNSEL

**ARGUED:**  Sarah Riley Howard, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellant.  Jennifer J. Sinclair, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Sarah Riley Howard, John J. Bursch, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellant. Jennifer J. Sinclair, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

          SUTTON, J., delivered the opinion of the court, in which KETHLEDGE, J., joined. BATCHELDER, C.J. (pp. 10-11), delivered a separate dissenting opinion.

―――――――――――――

## OPINION

―――――――――――――

          SUTTON, Circuit Judge.  Over a two-year period starting eighteen years ago, Sebastian Lucido stood trial on a number of federal money-laundering charges, for which a jury acquitted him in one case and a trial judge acquitted him in the other.  In 2008, Lucido

filed motions in the district court that presided over his trials to expunge all records of those proceedings held by the FBI, complaining that the maintenance and publication of his arrest records has caused reputational harm to him and to his money-management business. The district court denied Lucido's motions on the merits. As we conclude that the court lacked jurisdiction to entertain these requests, we vacate the district court's orders and remand the cases to the court to dismiss them for lack of jurisdiction.

I.

On March 31, 1992, a federal grand jury indicted fourteen co-defendants for various racketeering, conspiracy and money laundering crimes. The indictment named Lucido in one of the eighty-two counts. Lucido pled not guilty, and, after the government had presented its evidence but before the case went to the jury, the district court granted his motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.

On March 10, 1993, another federal grand jury in the same district court indicted fourteen co-defendants on a variety of money-laundering and conspiracy crimes. The indictment named Lucido in seven of the twenty-two counts. Lucido pled not guilty, and a jury acquitted him of all charges.

Fifteen years later, Lucido filed "motion[s] for expungement of arrest record" in the same district court under his original criminal case numbers, filing one motion with Judge Edmunds and the other with Judge Borman. Lucido claimed that records of his indictments appeared in a database maintained by the Financial Industry Regulatory Authority (FINRA). A private entity, FINRA uses information self-reported by its financial-industry members, and verified by the FBI (at the direction of the Attorney General and Congress), to assist investors in researching securities brokers. The public availability of these records through FINRA, Lucido claimed, damaged his investment management business. The government responded that the court lacked jurisdiction to entertain Lucido's motions.

Judge Edmunds held that the court had jurisdiction over the motion in her case but denied it on the merits. One week later, Judge Borman adopted "Judge Edmunds' decision and the reasons set forth in her opinion" and rejected Lucido's second motion as well.

R.333.  Lucido filed timely appeals from both orders, and we have consolidated them on appeal.

II.

Before considering the merits of Lucido's expungement motions, we must consider a more "fundamental question":  our power to do so.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  "[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review."  *Id.* at 95 (internal quotation marks omitted).  As "courts of limited jurisdiction," federal courts "possess only that power authorized by Constitution and statute" and may not expand that power "by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

There are three possible avenues for finding jurisdiction here.  *First*, does the court's original authority over Lucido's criminal cases directly provide the requisite jurisdiction? When Lucido's criminal cases first came before the district court in 1992 and 1993, no one could doubt the court's authority to hear them.  "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  18 U.S.C. § 3231.  The court, then, plainly had authority over the criminal charges.  Yet those two cases have come and gone, ending when the district court entered unchallenged final judgments in each of them, "divest[ing]" the district courts "of all jurisdiction" over them.  *United States v. Martin*, 913 F.2d 1172, 1174 (6th Cir. 1990).  The essential effect of entering a final (unappealed) judgment acquitting an individual of charges brought against him is to *end* the government's and the court's authority over the individual, not to let it linger.  The statutory premise for the court's original authority over Lucido thus does not by itself provide a basis for considering Lucido's expungement motions.

*Second*, if § 3231 does not directly empower the district court to entertain this expungement motion, is there any other statute that does?  Not that we, or for that matter Lucido, have been able to identify.  Several statutes permit expungement motions, but they do not apply to Lucido's case.  One authorizes district courts to entertain expungement requests from certain individuals convicted of violating the Controlled Substances Act.  *See*

18 U.S.C. § 3607(c); *see also* 21 U.S.C. § 844a(j).  Another authorizes the same to correct inaccurate government records.  *See* 5 U.S.C. § 552a(g).   And still others authorize the expungement of DNA records.  *See* 42 U.S.C. § 14132(d); 10 U.S.C. § 1565(e).  All told, however, no statute authorizes the district court to entertain this type of expungement motion.

*Third*, if neither § 3231 nor any other federal statute directly empowers district courts to entertain expungement motions, is it possible that § 3231 *indirectly* does so?  Section 3231 of course says nothing about expungement motions.  Yet once the courts have original authority to address a criminal charge, Lucido argues, they retain "inherent, equitable power" to consider expungement motions filed under their "ancillary jurisdiction"—ancillary, that is, to the primary criminal action.  Reply Br. at 6–10.

Yet the ancillary power of the federal courts does not "stretch" that "far."  *Kokkonen*, 511 U.S. at 379.  In *Kokkonen*, the defendant removed state-law claims to federal court based on diversity jurisdiction.  The parties settled the case, and the district court dismissed it with prejudice under Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure through an order that did not reserve the trial court's authority to enforce the settlement agreement.  *Id.* at 376–77.  Roughly one month later, a dispute arose over the meaning of the settlement agreement and the parties' obligations under it, prompting one of the parties to return to the district court to seek enforcement of the settlement contract.  Invoking its "'inherent power,'" the district court enforced the settlement, and the court of appeals affirmed.  *Id.* at 377.

The Supreme Court disagreed, noting that enforcement of the agreement was "more than just a continuation or renewal of the dismissed suit, and hence required its own basis for jurisdiction."  *Id.* at 378.  In the absence of "some independent basis for federal jurisdiction," the Court held that the district court had no basis for resolving the parties' contract dispute.  *Id.* at 382.  "[A]ncillary jurisdiction," the Court explained, allows federal courts to hear "some matters (otherwise beyond their competence) that are *incidental* to other matters properly before them," *id.* at 378 (emphasis added), and identified two legitimate forms of ancillary jurisdiction: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," and "(2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and

effectuate its decrees." *Id.* at 379–80. Neither category sufficed to provide jurisdiction in *Kokkonen.*

The same is true here. Lucido does not invoke the first category, and with good reason. It concerns a single court's authority to resolve "factually interdependent" claims, which does not apply to claims filed sixteen years apart, that turn on different facts and that rest on different sources of authority: a grand jury's authority to indict in the one instance and a federal court's authority to remove any record of the indictment in the other.

The second category, which Lucido does invoke, is no more helpful. What is it about "manag[ing]" a criminal case, "vindicat[ing]" its power over the case and "effectuat[ing]" any orders in the case that requires a district court to have authority, sixteen years later, to remove any record held by any federal entity of the proceeding? None that we can see. These criminal cases have long since been resolved, and there is nothing left to manage, vindicate or effectuate. So long as the records of what happened in the proceedings—that he was twice indicted and twice acquitted—are accurate, it is difficult to see what business the courts have as a matter of inherent power in removing any trace of the proceedings.

Keep in mind that Lucido is not asking the court to remove records of its *own* proceedings. That is not what Lucido wants, and it would not remedy the harm he targets. What Lucido wants is to remove records of the indictments held by the executive branch (the FBI) and kept at the direction of the legislative branch, which has ordered the Attorney General to "acquire, collect, classify, and preserve" this kind of criminal history information. 28 U.S.C. § 534(a); *see also* 28 C.F.R. § 0.85(f) (instructing the Director of the FBI to operate "a computerized nationwide index of law enforcement information"); 28 C.F.R. § 16.31 ("FBI identification record[s]" include "date of arrest," "arrest charge" and "the disposition of the arrest"); 28 C.F.R. § 20.3 ("Criminal history record information . . . consist[s] of identifiable descriptions and notations of arrests, detentions, indictments, informations, or other formal criminal charges, and any disposition arising therefrom, including acquittal, sentencing, correctional supervision, and release."). Lucido's request, if granted, would amount to an extraordinary inter-branch incursion, one that should not

lightly be effectuated through the federal courts' unexceptional right to oversee their own criminal cases.

The key premises of Lucido's motion, moreover, have nothing to do with the records of the criminal cases. They concern matters that occurred *after* the criminal proceedings: his good conduct since the acquittals, his successful investment business and (in some tension with the last point) his difficulty attracting clients due to the records of the indictments. Most of these are fair points to be sure, but all of them have nothing to do with the facts underlying Lucido's original criminal cases. Allowing the FBI to preserve these records, as Congress has directed, is "entirely consistent with and respectful of the jury's ultimate judgment" in this case, as the records "accurately document his arrest, trial and acquittal." *United States v. Coloian*, 480 F.3d 47, 52 (1st Cir. 2007).

In holding that the federal courts lack ancillary jurisdiction to consider expungement motions directed to the executive branch, we join all four circuits that have considered the point and that have addressed *Kokkonen* in doing so. Since the Court decided *Kokkonen* in 1994, the First, Third, Eighth and Ninth Circuits all have declined to recognize ancillary jurisdiction under § 3231 to entertain expungement motions and have revisited contrary pre-*Kokkonen* circuit authority in the process. *See Coloian*, 480 F.3d at 47; *United States v. Meyer*, 439 F.3d 855, 860 (8th Cir. 2006); *United States v. Dunegan*, 251 F.3d 477 (3d Cir. 2001); *United States v. Sumner*, 226 F.3d 1005 (9th Cir. 2000). The only authority to our knowledge cutting the other way comes from decisions that predate *Kokkonen*, *see, e.g.*, *Livingston v. U. S. Dep't of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985); *Allen v. Webster*, 742 F.2d 153, 154–55 (4th Cir. 1984); *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977); *United States v. Linn*, 513 F.2d 925, 927 (10th Cir. 1975), or that never discuss or even cite *Kokkonen*, *see, e.g.*, *United States v. Flowers*, 389 F.3d 737, 738–39 (7th Cir. 2004).

For like reasons, Lucido finds no refuge in two Sixth Circuit cases: *United States v. Doe*, 556 F.2d 391, 393 (6th Cir. 1977); and *United States v. Carey*, 602 F.3d 738, 740 (6th Cir. 2010). *Doe* predates *Kokkonen*, and in one sentence it noted (without citation) that "[i]t is within the inherent equitable powers of a federal court to order the expungement of a record in an appropriate case." 556 F.2d at 393. Although a "prior decision" by a "panel

of this Court" is "controlling authority" in subsequent cases, "an inconsistent decision of the United States Supreme Court" requires "modification" of the earlier panel decision. *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). This is just such a case: *Doe* cannot be reconciled with *Kokkonen* because it extends the courts' jurisdiction beyond that provided by the Constitution, by statute and by the limited doctrine of ancillary jurisdiction. "[W]e must—as a lower federal court—apply all pertinent Supreme Court precedent," *Rosales-Garcia v. Holland*, 322 F.3d 386, 414 (6th Cir. 2003), including precedent that overrules Sixth Circuit decisions.

*Carey* suffers from similar problems. It involved an expungement request—filed, as in this case, under the original criminal docket number—premised on a claim that records of the defendant's criminal history prevented him from owning a firearm in violation of his constitutional right to bear arms. *See* 602 F.3d at 740–41. The district court denied the request, and the panel affirmed on the merits after noting, again in one sentence, that "[a]n order on a motion to expunge a conviction is within the equitable jurisdiction of a federal district court." *Id.* at 740. The opinion cited only *Doe* for this proposition. There was no further discussion of the point, let alone a reference to *Kokkonen* or an analysis of its application to expungement motions. Neither Carey's nor the Government's briefs cited *Kokkonen*, discussed ancillary jurisdiction or otherwise challenged the court's power to consider the requests. Cases implicating issues that "merely lurk in the record, neither brought to the attention of the court nor ruled upon," do not establish binding precedent on the unexamined point. *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006). "[D]rive-by jurisdictional rulings . . . have no precedential effect." *Steel Co.*, 523 U.S. at 91; *see Lewis v. Casey*, 518 U.S. 343, 353 n.2 (1996) ("[S]tanding was neither challenged nor discussed in that case, and we have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect."); *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 97 (1994) ("The jurisdiction of this Court was challenged in none of these actions, and therefore the question is an open one before us."); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 63 n.4 (1989) ("[T]his Court has never considered itself bound by [prior *sub silentio* holdings] when a subsequent case finally brings the jurisdictional issue before us."); *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("[T]his Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a

prior exercise of jurisdiction in a case where it was not questioned . . . ."); *United States v. More*, 7 U.S. (3 Cranch) 159, 172 (1805) (Marshall, C.J.) ("No question was made, in that case, as to the jurisdiction. It passed *sub silentio*, and the court does not consider itself as bound by that case.").

\* \* \* \* \*

In one sense, the resolution of this dispute, like the resolution of many jurisdictional disputes, seems unduly technical and legalistic. The equitable premise of Lucido's motion after all is not illegitimate: He claims to have gotten wrapped up unfairly in a criminal prosecution eighteen years ago and, even though he was acquitted of all charges and even though he has had an untarnished law-abiding record ever since, the taint of the indictments lives on, undermining his reputation and money-management business. Why shouldn't the federal courts be able to clean the slate on decades-old indictments when fair-minded reasons exist for doing so?

That the federal courts are courts of limited jurisdiction, empowered only to wield power Congress and the Constitution have given them, is one answer.

Another answer is that one person's equitable power is another person's authority to remake federal law and to cross serious separation-of-power divides in the process. The power to expunge an indictment is the power to undermine a web of federal (and state) laws designed to collect and preserve such information for law enforcement purposes. Congress, as noted, has commanded the Attorney General to "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records" and to "exchange such records and information with, and for the official use of, authorized officials of the Federal Government, including the United States Sentencing Commission, the States, cities, and penal and other institutions." 28 U.S.C. § 534(a)(1). In implementing this authority, the Attorney General has delegated to the Director of the FBI responsibility for creating a nationwide computer index of law enforcement information under the direction of the National Crime Information Center. *See* 28 C.F.R. §§ 0.85(f), 16.31, 20.3. And, as relevant here, securities firms must submit their employees' fingerprint information to the "Attorney General of the United States for identification," and "the Attorney General" must provide organizations such as FINRA "with access to all criminal history record information."

15 U.S.C. § 78q(f)(2); 17 C.F.R. § 240.17f-2; FINRA Rule 3070.  These record-keeping and reporting requirements are extensive and not inconsequential as a matter of law-enforcement policy.  To the extent a federal court has the power to nullify these rules—to erase indictments and convictions that Congress had commanded the executive branch to preserve—it hardly seems unfair to insist that Congress, not a court's inherent equitable power, be the source of that authority.

## III.

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). We therefore vacate the district court's orders and remand the cases to the district court to dismiss them for lack of jurisdiction.

————————————

**DISSENT**

————————————

ALICE M. BATCHELDER, Chief Circuit Judge, dissenting. If we were writing on a clean slate, I would join the portion of the majority opinion that explains why we do not have subject matter jurisdiction here. But we are not writing on a clean slate, and I am therefore compelled to write separately because I believe that we are bound by *United States v. Carey*, 602 F.3d 738 (6th Cir. 2010). Accordingly, I must respectfully dissent.

Sixth Circuit Rule 206(c) is unequivocal: "Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court *en banc* consideration is required to overrule a published opinion of the court." 6 Cir. R. 206(c) (adopted 1998; rules last updated Dec. 1, 2009). *Carey* is a published opinion of a previous panel and, consequently, we as a subsequent three-judge panel may not overrule it.

The majority contends — in a most persuasive opinion — that we must overrule *Carey* because it is inconsistent with *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375 (1994). But as the majority also makes evident, *Carey* is almost exactly on point with the present case, whereas neither *Carey* nor the present case is exactly on point with *Kokkonen*. It is therefore necessary to extend *Kokkonen* (albeit reasonably, I agree) to cover the expungement issue raised here. But, more importantly, *Kokkonen* is not intervening. *Kokkonen* was decided in 1994, some 16 years before *Carey*. The four Circuits that applied *Kokkonen* to this expungement issue did so three, four, nine, and ten years before *Carey*. *See United States v. Coloian*, 480 F.3d 47 (1st Cir. 2007); *United States v. Meyer*, 439 F.3d 855 (8th Cir. 2006); *United States v. Dunegan*, 251 F.3d 477 (3d Cir. 2001); *United States v. Sumner*, 226 F.3d 1005 (9th Cir. 2000). Thus, *Kokkonen*'s rule and its application to the present issue were well established at the time *Carey* issued.

The majority explains the *Carey* panel's failure to cite, follow, or reconcile *Kokkonen* as little more than an oversight, inasmuch as neither Carey nor the Government raised the issue in their briefs to this court. But I cannot agree that subject matter jurisdiction is an issue that "merely lurk[s] in the record, neither brought to the attention of the court nor

ruled upon." Quite the contrary, subject matter jurisdiction is unique — federal courts are courts of limited jurisdiction and we must inquire into our subject matter jurisdiction *sua sponte* if the parties have not raised it. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (quotation and editorial marks omitted)); *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976); *Mickler v. Nimishillen & Tuscarawas R.R.*, 13 F.3d 184, 189 (6th Cir. 1993) ("Although neither party raised this issue on appeal, this Court must raise the matter *sua sponte* because it goes to the issue of subject-matter jurisdiction."). Nor can I agree that the Supreme Court's approach to "drive-by jurisdictional rulings" serves to overcome Sixth Circuit Rule 206(c). The Supreme Court is not bound by Sixth Circuit Rule 206(c), of course, nor does it have any similar, self-governing rule inasmuch as the Supreme Court *always* sits *en banc* and never as a three-judge panel. Our station as a panel is not equal to that of the Supreme Court.

I believe that our decision in *Carey* is wrong. Nonetheless, I believe that the governing law of this Circuit, namely Sixth Circuit Rule 206(c), requires us to adhere to the published opinion in *Carey* and hold that — until such time as we can consider this issue *en banc* or the Supreme Court speaks again to this issue — we have equitable jurisdiction to decide a motion to expunge. Because, based on the present record, I cannot conclude that the district court abused its discretion by denying the motion, I would affirm the district court on the merits.