**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50288 |
| *Plaintiff-Appellee*, | D.C. No. |
| v. | 3:13-cr-02196-JLS-16 |
| SALVATORE GIACOMO GROPPO, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted January 8, 2024
Pasadena, California

Filed May 24, 2024

Before: Morgan Christen and Mark J. Bennett, Circuit
Judges, and Gary S. Katzmann,[*] Judge.

Opinion by Judge Katzmann

---

[*] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

# SUMMARY**

## Criminal Law

The panel affirmed the district court's denial of Salvatore Groppo's motion to expunge his conviction for aiding and abetting the transmission of wagering information for his role as a "sub-bookie" in an unlawful international sports gambling enterprise.

Groppo pleaded guilty in 2014 and was sentenced to five years' probation, 200 hours of community service, a $3,000 fine, and a $100 special assessment. In moving to expunge the conviction in 2022, Groppo sought relief from a potential tax liability on his sports wagering activity. He contended that the IRS's assessment, in reliance on the criminal proceedings, of a potential tax liability of over $100,000 in excise tax and penalties was highly disproportionate to the amount he agreed to forfeit in his plea deal, effectively distorting the judgment of conviction.

The panel held that because Groppo alleged neither an unlawful arrest or conviction nor a clerical error, the district court correctly determined that it did not have ancillary jurisdiction to grant the motion to expunge. The panel explained that a district court is powerless to expunge a valid arrest and conviction solely for equitable considerations, including alleged misconduct by the IRS.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Benjamin Holley (argued) and Janaki G. Chopra, Assistant United States Attorneys; Daniel E. Zipp. Assistant United States Attorney, Appellate Section Chief, Criminal Division; Andrew R. Haden, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Ezekiel E. Cortez (argued) and Joshi Valentine, Law Offices of Ezekiel E. Cortez, San Diego, California, for Defendant-Appellant.

## OPINION

KATZMANN, Judge:

In 2014, Defendant-Appellant Salvatore Groppo pleaded guilty to aiding and abetting the transmission of wagering information under 18 U.S.C. § 1084 for his role as a "sub-bookie" in an unlawful international sports gambling enterprise. The court accepted the guilty plea. He was sentenced to five years' probation, 200 hours of community service, a $3,000 fine, and a $100 special assessment. Nearly eight years later in 2022, Groppo moved to expunge his 2014 conviction, seeking relief from a potential tax liability of over $100,000 on his sports wagering activity in Macho Sports. He argued that the tax liability was disproportionate to his relatively minor role in the criminal enterprise. Relying on Ninth Circuit case law and the terms of the plea agreement, the district court denied the motion.

Groppo appeals for review of that denial. We have appellate jurisdiction under 28 U.S.C. § 1291. Because the

district court correctly determined that it did not have ancillary jurisdiction to grant Groppo's motion to expunge, we affirm.

## I.

## A.

On June 13, 2013, Groppo and eighteen other codefendants were indicted for their involvement in Macho Sports International Corporation, which operated websites "offering, conducting, and facilitating unlawful computer- and telephone service-based sports gambling" within the United States while being headquartered in Peru. The two-count indictment charged the defendants with racketeering conspiracy, 18 U.S.C. § 1962(d), and operating an illegal gambling business, 18 U.S.C. § 1955. Groppo was charged with only the latter.

In March 2014, Defendant pleaded guilty to a two-count Superseding Information charging him for twice aiding and abetting violations of 18 U.S.C. § 1084, which governs the unlawful transmission of wagering information. The plea agreement stated that "[f]rom at least 2012 until June 19, 2023, Defendant . . . . was a sub-bookie in the Macho Sports bookmaking organization." Groppo also was directed to forfeit $377, representing a small share of the millions in assets forfeited by all defendants in the case. In agreeing to the plea deal, Groppo understood that the plea agreement "cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, although the United States will bring this plea agreement to the attention of other authorities if requested by Defendant."

On March 28, 2014, the district court accepted Groppo's guilty plea. At the sentencing hearing on August 29, 2014,

the Government and Groppo jointly requested to withdraw Groppo's guilty plea as to the second count of the Superseding Information, and the court granted the request. Groppo was sentenced to five years' probation, 200 hours of community service, a $3,000 fine, and a $100 special assessment. Three years into Groppo's probation, the Government and Groppo jointly moved for early termination of his probation period, which the court granted.

In the years that followed, "Groppo has continued to be a hard-working, dedicated family man," and has faced several consequences flowing from his conviction in 2014. He attempted to open his own business, but at least one law firm declined to accept him as a client due to litigation records and news reports. He also complains of diminished employment prospects and issues with opening and maintaining bank accounts.

Groppo also states that the Internal Revenue Service ("IRS") assessed a potential tax liability of over $100,000 in excise tax and penalties on his bookmaking activity in Macho Sports.[1] Relying on the criminal proceedings, the IRS stated in its explanation for imposing the liability:

> Based upon the criminal indictment, Plea Agreement, and the investigation by the Federal Bureau of Investigation's wiretap, the Taxpayer[']s involvement in Macho

---

[1] "Excise taxes are taxes imposed on certain goods, services, and activities." *Excise Tax*, IRS, https://www.irs.gov/businesses/small-businesses-self-employed/excise-tax (last updated Oct. 3, 2023). "Sports wagering, like wagering in general, is subject to federal excise taxes, regardless of whether the activity is allowed by the state." *Sports Wagering*, IRS, https://www.irs.gov/businesses/small-businesses-self-employed/sports-wagering (last updated Feb. 29, 2024).

> Sports Internet Gambling Ring was prior to 2012 and continued up through June 2013. . . .
>
> Based on the above facts and law, the Taxpayer was engaged in the business of being a bookmaker.  The Taxpayer's plea agreement outlines that the Taxpayer was in the business of bookmaking. The Federal Bureau of Investigation and United States Attorney's Office affirmed to the Internal Revenue Service that the Taxpayer was an illegal bookmaker. . . .
>
> The three elements of [the] wager case were established and the Taxpayer is liable for the Federal Excise Tax on Form 730 & 11C.

The IRS also stated in its explanation: "If the tax assessment is wrong and taxpayer or POA can prove it[,] then why won't the Taxpayer provide adequate records that can be substantiate[d] as required by Internal Revenue Code and Treasury Regulations?"   The record does not indicate whether Groppo contacted the U.S. Attorney's Office to bring the plea agreement to the IRS's attention, as he was entitled to do.

Groppo represented to the district court that his "IRS lawyer advised him to just settle for approximately $40,000.00 to avoid being held liable for well over $100,000.00.  Unfortunately, Mr. Groppo was forced to use his daughter's college fund to pay the IRS."  The district court understood the latter sentence to mean that Groppo "apparently took" the IRS lawyer's advice, though the

record or underlying docket contains no evidence of an IRS settlement.

## B.

In August 2022, Groppo moved to expunge his felony conviction. He argued that the court had ancillary jurisdiction to expunge his conviction under Ninth Circuit precedent and that the circumstances here warranted expungement because "the existence of his felony conviction continues to punish him beyond what the parties or this court intended." The Government responded that the court should deny the motion for lack of jurisdiction, which Groppo contested.

The district court denied the motion. Concluding that it lacked ancillary jurisdiction to grant Groppo's relief, the court reasoned that the "expungement of a conviction is available only if the conviction itself was unlawful or otherwise invalid" and that the "IRS's imposition of an excise tax does not provide grounds for relief as 'government misconduct'" that would warrant expungement. *United States v. Groppo*, No. 13-CR-2196 JLS, 2022 WL 17085923, at *3 (S.D. Cal. Nov. 18, 2022). It further stated that "[w]hile the Court is sympathetic to the difficulties Defendant continues to face as a result of his conviction, it cannot grant the relief Defendant seeks." *Id.* Groppo timely appealed the district court's denial.

## II.

On appeal, Groppo argues that the district court erred in denying his motion to expunge for lack of ancillary jurisdiction. He contends that the IRS's assessment of excise tax that was highly disproportionate to the amount he agreed to forfeit in his plea deal effectively distorted the judgment

of conviction. According to Groppo, that should have invoked the district court's ancillary jurisdiction over the expungement power to "effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994). Relatedly, Groppo argues that the IRS's actions constitute government misconduct, which we have recognized as an "extreme circumstance[]" warranting expungement. *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991) (per curiam). Addressing those interrelated arguments together, we affirm the district court.

A defendant seeking expungement "asks that the court destroy or seal the records of the fact of the defendant's conviction." *United States v. Crowell*, 374 F.3d 790, 792 (9th Cir. 2004). "[E]xpungement, without more, 'does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty.'" *Id.* (quoting *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 115 (1983)). That is different from a motion to vacate a conviction, which "sets aside or nullifies the conviction and its attendant legal disabilities," but "does not necessarily attempt to erase [records of] the fact of the conviction." *Id.*

A federal court's power to expunge is sourced in one of two authorities: statute or the court's inherent authority. *See id.* Groppo appears to agree that no statute is on point in this case, so we turn to inherent authority. District courts have original jurisdiction "of all offenses against the laws of the United States." 18 U.S.C. § 3231. And while Congress has not expressly established a general power to expunge criminal records, district courts "possess ancillary jurisdiction to expunge criminal records" arising out of 18 U.S.C. § 3231. *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000). Ancillary jurisdiction, in turn, refers

to federal subject matter jurisdiction "over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378. Such jurisdiction is asserted for two separate purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (citations omitted).

Applying *Kokkonen* to the expungement context, we have held that "a district court's ancillary jurisdiction is limited to expunging the record of an unlawful arrest or conviction, or to correcting a clerical error." *Sumner*, 226 F.2d at 1014. And a defendant requesting expungement for her unlawful conviction must have first "obtained a judgment that her conviction must be vacated or otherwise set aside." *Crowell*, 374 F.3d at 797. By contrast, a district court is powerless to expunge "a valid arrest and conviction solely for equitable considerations" because such relief falls outside its ancillary jurisdiction. *Sumner*, 226 F.2d at 1014.

Groppo alleges neither an unlawful arrest or conviction nor a clerical error. Instead, he relies on *Smith*, in which we held that expungement is "appropriately used only in extreme circumstances," like where the "arrest or conviction was in any way unlawful or invalid" or where "the government engaged in any sort of misconduct." 940 F.2d at 396. Expungement may also be warranted upon a showing of "any other factor which could outweigh the government's interest in maintaining criminal records." *Id.* Groppo here argues that the IRS engaged in misconduct and that *Smith* permits such alleged misconduct, without a judgment of unlawful arrest or conviction, to form the basis for expungement.

That singular reading of *Smith* ignores *Crowell* and *Sumner*. The kinds of government misconduct or any other factors that warrant expungement must have resulted in (1) a judgment that an arrest or conviction is unlawful or (2) a clerical error. *Crowell* and *Sumner* make that clear. Interpreting *Kokkonen*, those decisions held that "a district court's ancillary jurisdiction is *limited*" to those two bases for expungement. *Sumner*, 225 F.3d at 1014 (emphasis added); *see also Crowell*, 374 F.3d at 797. On its own terms, too, *Smith* is best read as refined by *Crowell* and *Sumner*. Decided before the Supreme Court defined ancillary jurisdiction in *Kokkonen*, *Smith* merely "assume[d]" without deciding that expungement was within a district court's inherent powers. 940 F.2d at 396.

Groppo concedes that he does not have a judgment that his guilty plea and conviction are unlawful. His case therefore fails at the outset.[2] More to the point, the IRS's allegedly unlawful action would not be the kind of government misconduct that would warrant expungement. Beyond pointing to the disparity between his plea deal with the DOJ and the IRS's enforcement action—a $3,000 fine versus more than $100,000 in tax liability—he does not explain how a post-hoc agency action distorts the validity of his conviction. Groppo's arrest and conviction were not obtained *through* the IRS's allegedly unlawful conduct. *See United States v. Lucido*, 612 F.3d 871, 875 (6th Cir. 2010) (reasoning that "matters that occurred *after* the criminal

---

[2] Groppo's plea agreement may also bar him from moving to vacate his conviction. Groppo agreed to "waive[] to the full extent of the law, any right to collaterally attack the conviction and/or sentence," with an exception not relevant here. And motions to vacate convictions are generally collateral attacks on the conviction. *See United States v. Broce*, 488 U.S. 563, 569 (1989).

proceedings" that "have nothing to do with the facts underlying . . . original criminal cases" do not justify expungement).  For the same reason, the IRS did not "flout[] or imperil[]" the district court's judgment of conviction or otherwise act in a manner that would have prevented the district court from "effectuat[ing]" its decrees.  *Kokkonen*, 511 U.S. at 380–81.  To the contrary, the IRS relied on Groppo's conviction to assess a tax liability that is a "natural and intended collateral consequence[] of having been convicted."  *Smith*, 940 F.2d at 396.

To be sure, the IRS's enforcement action may well be a burdensome consequence stemming from Groppo's conviction.  But that is an expungement request for solely equitable relief that the district court cannot grant.  *See Sumner*, 226 F.2d at 1014.  The plea agreement expressly did not "bind any other . . . prosecuting, administrative, or regulatory authorities," including the IRS.  Moreover, Groppo passingly alleges that the IRS violated the Fifth Amendment due process clause and Eighth Amendment guarantee against cruel and unusual punishment.  Even if those challenges had merit, the proper route would be to file an administrative appeal or sue the agency for relief.  Rebranding challenges to agency action as expungement requests would make expungement "no longer . . . the narrow, extraordinary exception, but a generally available remedy."  *Smith*, 940 F.2d at 396.  That result would risk "usurp[ing]" the powers of Congress and the Executive to legislate and enforce violations of other laws arising out of the same facts of a federal criminal conviction.  *Sumner*, 226

F.3d at 1014.  Groppo's remedy, therefore, does not lie in expungement.[3]

   **AFFIRMED.**

---

[3] Furthermore, even if the district court had ancillary jurisdiction over Groppo's motion, he would "be eligible for, but would not be entitled to, the extraordinary remedy of expungement."  *Crowell*, 374 F.3d at 796 (collecting cases).