# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-1822

_____

United States of America,

        Appellant,

    v.

Michael Meyer,

        Appellee.

Appeal from the United States District Court for the Eastern District of Arkansas.

_____

Submitted: November 15, 2005
Filed: March 7, 2006

_____

Before MURPHY, McMILLIAN[1] and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Based only on the desire to maintain a position of employment that did not allow certain criminal convictions, Michael Meyer sought and was granted an

_____

[1]The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

-1-

expungement of his criminal record.  Because we conclude that a district court is without subject matter jurisdiction to expunge a criminal record where the motion to expunge is based solely on equitable considerations, we reverse the district court with directions to grant the Government's motion to vacate the expungement order.

## I.    BACKGROUND

In 1988 the Government charged Meyer by information with failure to file income tax returns, a misdemeanor, in violation of 26 U.S.C. § 7203.  Meyer appeared with counsel and expressly consented to proceed before a magistrate judge.  The magistrate judge accepted Meyer's guilty plea and sentenced him to a one-year suspended sentence, three years of probation, a fine of $1,000 and a special assessment of $25.  In 1991, the Government filed a motion to revoke, or in the alternative to extend, the probation. The magistrate judge extended Meyer's probation by nine months, and Meyer successfully completed probation.

In March 2004 Meyer filed a pro se motion to expunge his conviction.  He filed the motion under the same docket number as his original misdemeanor case and before the same magistrate judge who had handled that case.  As grounds for expungement, Meyer stated in an affidavit that he was employed in the securities industry by an institution insured by the Federal Deposit Insurance Corporation ("FDIC") and that FDIC regulations restricted the employment of individuals who had been convicted of certain criminal offenses.  The Government filed a response stating that it had no objection to the motion.  On April 6, 2004, the magistrate judge granted the motion for expungement, ordering that "all records of the misdemeanor conviction herein shall be expunged from the records of this Court and from any law enforcement data bases (NCIC [National Crime Information Center] or otherwise) so that [Meyer] will cease suffering unwarranted consequences from this conviction, which upon expungement will become as for naught in the public record." *United States v. Meyer*,

No. 88-15 (E.D. Ark. Apr. 6, 2004) (order of expungement of misdemeanor conviction).

On May 6, 2004, the Government filed a "notice of appeal" to the district court of the magistrate judge's April 6 order of expungement on the basis that the magistrate judge lacked subject matter jurisdiction to enter the order. On October 4, 2004, the Government filed a motion to vacate the order of expungement with an accompanying brief. The Government acknowledged that it had waived its opposition on the merits by not objecting to Meyer's motion to expunge, but argued that neither the district court nor the magistrate judge had subject matter jurisdiction to order expungement of the record of a valid conviction. Meyer filed a motion to dismiss the appeal on November 1, 2004, contending that the Federal Rules of Appellate Procedure applied and that the Government failed to timely file its appellate brief with the district court. On November 8, 2004, the Government filed a response in opposition to Meyer's motion to dismiss and, in the alternative, a motion for leave to file out of time. Finally, on January 4, 2005, Meyer filed a response to the Government's motion to vacate the order of expungement.

Following oral argument, the district court issued a lengthy opinion dated March 10, 2005. First, the district court concluded that Local Rule 72.1(XI) of the Rules of the United States District Court for the Eastern and Western Districts of Arkansas, which applies to "[r]ulings, orders, or other actions by a Magistrate Judge in the District, review of which is not otherwise specifically provided for by law or these rules," governed the situation because "expungement rulings are not 'specifically provided for by law or these rules.'" Dist. Ct. Order at 3 (quoting Local Rule 72.1(XI)). Therefore, the district court stated that the Government's notice of appeal was untimely because it was filed 30 days after the magistrate judge's order, whereas Local Rule 72.1 (XI(A)) provides that "[a]ny party may file and serve, not later than 10 days thereafter an application for review of the Magistrate Judge's action

-3-

by the District Judge having jurisdiction." Because "the law is not clear" on the issue of which procedural rules apply, Dist. Ct. Order at 2, the district court decided in the alternative that, if the Federal Rules of Appellate Procedure applied, the Government had not diligently prosecuted the appeal because its brief was untimely filed. The Government's appeal was therefore "time barred." Dist. Ct. Order at 5.

Although the district court ultimately denied the Government's motion to vacate and granted Meyer's motion to dismiss because the Government was "procedurally barred," Dist. Ct. Order at 18, the district court proceeded to analyze extensively the substance of the Government's motion to vacate. The district court rejected the Government's argument that the Government had not consented to proceed before the magistrate judge, and, therefore, that the magistrate judge lacked subject matter jurisdiction over the motion to expunge under either the catchall provision, 28 U.S.C. § 636(b)(3), or the misdemeanor sentence provision, 28 U.S.C. § 636(a)(5). Next, the district court concluded that it had the inherent power to expunge criminal records as did the magistrate judge due to the parties' consent to proceed before the magistrate judge. Finally, the district court found that the Government's argument that Meyer lacked prudential standing to request expungement of his record was waived and, alternatively, had no merit.

The Government timely filed a notice of appeal to this Court of the district court's order. In this appeal the Government argues that neither the district court nor the magistrate judge had subject matter jurisdiction over Meyer's motion to expunge his criminal record. Because we conclude that a district court does not have ancillary jurisdiction over a motion to expunge a criminal conviction where the motion to expunge is based solely on equitable considerations, we conclude that the magistrate judge in this case lacked jurisdiction. Accordingly, we reverse and remand with directions to grant the Government's motion to vacate the expungement order.

## II.   DISCUSSION

"[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (internal quotations and citations omitted). We have appellate jurisdiction to entertain this appeal from a final order of the district court. *See* 28 U.S.C. § 1291. We have jurisdiction even if the Government's appeal to the district court was untimely because we find that the district court had discretion to review the substance of the appeal–in this case the issue of subject matter jurisdiction–under Local Rule 72.1(XI), which provides:

> Rulings, orders, or other actions by a Magistrate Judge in the District, review of which is not otherwise specifically provided for by law or these rules, shall, nevertheless, be subject to review by the District Court as follows:
>
> A. Any party may file and serve, not later than 10 days thereafter, an application for review of the Magistrate Judge's action by the District Judge having jurisdiction. Copies of such application shall be served promptly upon the parties, the District Judge, and the Magistrate Judge.
>
> B. After conducting whatever further proceedings he or she deems appropriate, the District Judge may adopt or reject, in whole or in part, the action taken by the Magistrate Judge, or take such other action he or she deems appropriate.

If the application for review is untimely, the district court may dismiss it. However, nothing in Local Rule 72.1(XI) precludes the district court from adopting or rejecting the magistrate judge's order or taking other appropriate action, regardless of the timeliness of any application for review.

We have held that under 28 U.S.C. § 636(b)(1),[2] which resembles Eastern District of Arkansas Local Rule 72.1(XI), a party does not lose the right to appeal from the district court to this Court by failing to timely file objections to a magistrate's report and recommendation within ten days "when the questions involved are questions of law or mixed questions of law and fact, or when neither the local district court rule nor the magistrate's notice has clearly informed the plaintiff that failure to object to the magistrate's report will result in waiver of the right to appeal." *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986); *see also Lorin Corp. v. Goto & Co.*, 700 F.2d 1202, 1205 (8th Cir. 1983); *cf. Thomas*, 474 U.S. at 146 & n.4, 154 (holding that with respect to a district court's judgment adopting a magistrate's recommendation, a court of appeals may adopt a rule conditioning appeal from the district court upon the timely filing of objections to the magistrate's report, and explaining that such a "rule merely establishes a procedural default that has no effect on the magistrate's or the [district] court's jurisdiction"). The question whether the magistrate judge had jurisdiction is one of law, and neither the local rule nor the

---

[2]28 U.S.C. § 636(b)(1) states in relevant part:

> Within ten days after being served with a copy [of the magistrate's proposed findings and recommendations], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

In *Thomas v. Arn*, 474 U.S. 140, 154 (1985), the Supreme Court explained that while this "statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard."

magistrate judge's order gave the Government notice that an untimely application for review would bar its appeal. Because the district court had authority to review the jurisdictional question and the Government timely appealed from the district court's order, we find that this matter is properly before us.

We proceed to review de novo the question of subject matter jurisdiction, *Bloemer v. Northwest Airlines, Inc.*, 401 F.3d 935, 936 (8th Cir. 2005), in this case whether a district court has subject matter jurisdiction over a motion to expunge where the motion is based solely on equitable reasons. Of course, without subject matter jurisdiction, a court is powerless to grant a motion for expungement. *See Steel Co.*, 523 U.S. at 94 ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868))); Fed. R. Civ. P. 12(h)(3). In the present case, the magistrate judge initially granted Meyer's motion for expungement. However, it is not necessary to approach the question solely in terms of the magistrate judge's authority with respect to a motion to expunge.[3] We conclude more generally that a district court does not have subject matter jurisdiction over a motion to expunge that is based solely on equitable considerations, and,

---

[3]*Compare United States v. Vasquez*, 74 F. Supp. 2d 964, 966-67 (S.D. Cal. 1999) (explaining that although neither 28 U.S.C. § 636 nor 18 U.S.C. § 3401 expressly grants nor denies magistrate judges the authority to expunge conviction records, the authority is implicit in the magistrate judge's authority to enter the conviction where the defendant has consented), *and United States v. Steelwright*, 179 F. Supp. 2d 567, 571-72 (D. Md. 2002) (same), *with United States v. Lopez*, 704 F. Supp. 1055, 1056 (S.D. Fla. 1988) (interpreting the absence of an explicit grant of authority to magistrate judges to order the expungement of a criminal record as a denial of such authority). We note that in *United States v. Sumner*, 226 F.3d 1005, 1011 (9th Cir. 2000), the Ninth Circuit viewed *Vasquez*'s discussion of the authority of the district court to expunge as mere dicta because in *Vasquez* the Government conceded jurisdiction.

therefore, a magistrate judge of the district court also lacks jurisdiction over such a motion.

Because Meyer does not seek expungement pursuant to any statutory authority,[4] the district court's jurisdiction to expunge Meyer's conviction could arise only from the exercise of ancillary jurisdiction incidental to the court's original jurisdiction over the underlying criminal prosecution pursuant to 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). In light of the Supreme Court's instruction narrowing the scope of ancillary jurisdiction in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994),[5] we are convinced that a district court does not have ancillary jurisdiction to expunge a criminal record based solely on equitable grounds.

We have recognized, in cases predating *Kokkonen*, an inherent but narrow power to expunge federal criminal records in extreme cases. *See United States v.*

---

[4]*See, e.g.*, 18 U.S.C. § 3607(c) (providing that certain persons convicted for violating the Controlled Substances Act may seek expungement); *see also Sumner*, 226 F.3d at 1012, 1015 (listing specific circumstances where expungement or correction of a criminal record is authorized by statutes, federal rules or the Constitution and finding no "statute in which Congress has empowered a district court to reopen a criminal case after its judgment has become final for the purpose of expunging a record of a valid arrest or conviction to enhance a defendant's employment opportunities").

[5]*Kokkonen* recalled the basic principle that "[f]ederal courts are courts of limited jurisdiction," 511 U.S. at 377, and held that the district court lacked ancillary jurisdiction to grant a motion to enforce a settlement agreement where the district court did not incorporate the terms of the settlement agreement into the order of dismissal nor retain jurisdiction over the settlement agreement, *id.* at 381-82.

*Geary*, 901 F.2d 679, 679-80 (8th Cir. 1990) (finding no extraordinary circumstances warranting expungement where the petitioner "made a series of nonspecific assertions such as that the arrest was not based on probable cause, that it was for the purpose of harassment, and that the existence of records . . . has caused him embarrassment and has impinged on his ability to earn 'a substantial livelihood'"); *United States v. Bagley*, 899 F.2d 707, 707-08 (8th Cir. 1990) (finding no extraordinary circumstances warranting expungement where an indictment was dismissed because the supporting evidence was seized unlawfully); *United States v. Doe*, 859 F.2d 1334, 1335-36 (8th Cir. 1988) (per curiam) (holding that expungement was not authorized by the Federal Youth Corrections Act, 18 U.S.C. §§ 5005-5026 (repealed 1984), and finding no extraordinary circumstances warranting expungement); *United States v. McMains*, 540 F.2d 387, 389-90 (8th Cir. 1976) (same). In these cases, we found no extraordinary circumstances "to justify the exercise of the court's inherent equity powers." *Doe*, 859 F.2d at 1336.

We hold, as have the Ninth and Third Circuits, that post-*Kokkonen* a motion to expunge a criminal record that is based solely on equitable grounds does not invoke the ancillary jurisdiction of the district court. In defining the bounds of ancillary jurisdiction, the Supreme Court in *Kokkonen* stated that

> we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

511 U.S. at 379-80 (citations omitted). The Supreme Court viewed the inherent power of the federal courts as a subset of the second category of ancillary jurisdiction, as

evidenced by *Kokkonen*'s language[6] and the cases cited to illustrate the second head of ancillary jurisdiction.[7]

The Ninth Circuit in *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000), held that a district court lacks ancillary jurisdiction to expunge criminal records on purely equitable grounds. Similar to Meyer in the present case, Sumner feared that his criminal record would prevent him from becoming certified to teach on a permanent basis and argued that the district court had the inherent power to order expungement of his record. *Id.* at 1008-10. The Ninth Circuit reasoned that expungement of a criminal record based only on equitable considerations does not serve the goals of ancillary jurisdiction as articulated by *Kokkonen*:

[6]"[I]t is the second head of ancillary jurisdiction, relating to the court's power to protect its proceedings and vindicate its authority, that both courts in the present case appear to have relied upon, judging from their references to 'inherent power.'" *Kokkonen*, 511 U.S. at 380.

[7]The cases that *Kokkonen*, 511 U.S. at 380, classifies as examples of the second head of ancillary jurisdiction do not use the term ancillary jurisdiction, but refer to "inherent" or "implied" power: *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991) (holding that federal courts have the inherent power to compel payment of an opposing party's attorney's fees as sanction for misconduct and describing the scope of the inherent power of a federal court as including the power to control admission to its bar and to discipline attorneys who appear before it, to punish for contempt, to vacate a judgment on proof of fraud, to bar disruptive criminal defendants from the courtroom, to dismiss an action on grounds of forum non conveniens, and to dismiss an action sua sponte for failure to prosecute); *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812) (noting that federal courts have the implied powers to fine for contempt, to imprison for contumacy or to enforce the observance of order, as they are "powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others"); and *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795-801 (1987) (holding that a district court had the inherent power to appoint an attorney to prosecute defendants for criminal contempt).

-10-

It is this latter purpose–to manage proceedings, vindicate authority, and effectuate decrees–that permits a district court to order the expungement of criminal records in cases over which it once exercised jurisdiction. Expungement of a criminal record solely on equitable grounds, such as to reward a defendant's rehabilitation and commendable post-conviction conduct, does not serve any of those goals.

*Id.* at 1014; *see also United States v. Crowell*, 374 F.3d 790, 793, 795-97 (9th Cir. 2004) (holding that the district court lacked ancillary jurisdiction to consider a solely "equitable" claim for expungement), *cert. denied*, 543 U.S. 1070 (2005). Rather, "a district court's ancillary jurisdiction is limited to expunging the record of an unlawful arrest or conviction, or to correcting a clerical error," *Sumner*, 226 F.3d at 1014, and the "power to expunge a record of a valid arrest and conviction on equitable grounds must be declared by Congress," *id.* at 1015.

Similarly, where the petitioner had "not alleged any unlawful arrest or other legal infirmity," the Third Circuit held that the district court lacked subject matter jurisdiction to entertain a petition to expunge a criminal record. *United States v. Dunegan*, 251 F.3d 477, 480 (3d Cir. 2001). The Third Circuit quoted *Kokkonen*'s instruction on the two purposes of ancillary jurisdiction and concluded, "We do not believe that these purposes contemplate a petition for the expungement of a criminal record." *Id.* at 479. Therefore, "in the absence of any applicable statute enacted by Congress, or an allegation that the criminal proceedings were invalid or illegal, a District Court does not have the jurisdiction to expunge a criminal record, even when ending in an acquittal." *Id.* at 480.

In this case, Meyer sought expungement based solely on the equitable considerations that his employer was insured by the FDIC and that FDIC regulations restricted the employment of individuals previously convicted of certain criminal

offenses.  Meyer did not allege that his misdemeanor conviction was in any way invalid or illegal nor did he rely on any Constitutional provision or statute authorizing either a district court or magistrate judge to expunge his criminal conviction.  A district court may have ancillary jurisdiction to expunge criminal records in extraordinary cases to preserve its ability to function successfully by enabling it to correct an injustice caused by an illegal or invalid criminal proceeding.  However, in light of *Kokkonen*, we conclude that ancillary jurisdiction does not extend to expungement of a criminal conviction where the petitioner asserts solely equitable grounds.

Permitting the expungement of a record solely on equitable grounds would interfere with state and federal laws that rely on the existence of accurate and complete criminal records.[8]  The federal law affecting Meyer, 12 U.S.C. § 1829, is one such example, because it restricts the eligibility of an individual "who has been convicted of any criminal offense involving dishonesty or a breach of trust or money laundering" to work at FDIC-insured institutions.   12 U.S.C. § 1829(a)(1).[9]

---

[8]*See, e.g.*, 8 U.S.C. § 1227(a)(2) (providing that an alien who is convicted of specified criminal offenses is deportable); 10 U.S.C. § 986(c)(1) (providing that the Department of Defense may not grant or renew a security clearance if the person has been convicted in any court of the United States of a crime, was sentenced to imprisonment for a term exceeding one year, and was incarcerated as a result of that sentence for not less than one year); 42 U.S.C. § 1973gg-6(a)(3)(B) ("In the administration of voter registration for elections for Federal office, each State shall provide that the name of a registrant may not be removed from the official list of eligible voters except as provided by State law, by reason of criminal conviction . . . ."); United States Sentencing Guidelines, ch. 4 (criminal history).

[9]An individual may be able to overcome the restriction if an insured institution files an application with the FDIC on behalf of such an individual to obtain written consent for the individual to be employed by an insured institution.  *See* 12 U.S.C. § 1829; 12 C.F.R. § 308.156-160 (procedures and standards for an application pursuant

Moreover, ordering the Executive Branch to expunge its records contravenes the statute requiring the Attorney General to preserve records. *See* 28 U.S.C. § 534(a)(1), (4) (providing that the Attorney General shall "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records" and "exchange such records and information with, and for the official use of, authorized officials of the Federal Government, including the United States Sentencing Commission, the States, cities, and penal and other institutions"); *see also* 28 C.F.R. § 0.85(f) (mandating that the Director of the Federal Bureau of Investigations operate a computerized nationwide index of law enforcement information under the National Crime Information Center). We agree with the Ninth Circuit that "the expungement of the record of a valid arrest and conviction usurps the powers that the framers of the Constitution allocated to Congress, the Executive, and the states." *Sumner*, 226 F.3d at 1014. For obvious and quite important reasons, Congress has recognized the critical nature of preserving criminal records and has specified the use and effect of certain criminal convictions. Allowing a district court to expunge criminal records based solely on equitable considerations, without an express grant of authority from Congress, would undermine these goals.

Because we hold that the district court lacks jurisdiction, it follows that a magistrate judge also lacks ancillary jurisdiction over a motion to expunge that is based on equitable considerations. There is no basis for a magistrate judge to be given greater powers than those of a district court. *See United States v. Torres*, 258 F.3d 791, 794 (8th Cir. 2001) ("Federal magistrate judges are not empowered to exercise judicial functions under Article III of the Constitution. Instead, their authority is that conferred by Congress under the Magistrates Act."); 28 U.S.C. § 636(b)(3) ("A magistrate judge may be assigned such additional duties *as are not inconsistent with the Constitution and laws of the United States*.") (emphasis added). Because the

---

to § 1829).

"[l]ack of subject matter jurisdiction cannot be waived by the parties or ignored by the court," *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005), we reverse and remand to the district court with instructions to grant the Government's motion to vacate the expungement order entered by the magistrate judge.

## III.   CONCLUSION

For the reasons set forth, the district court's order is reversed and the case remanded for proceedings consistent with this opinion.

_____