RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0136p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 13-1538

STACEY FIELD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:00-cr-00107-3—Paul Lewis Maloney, Chief District Judge.

Argued: January 28, 2014

Decided and Filed: June 27, 2014

Before: GUY, GIBBONS, and ROGERS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Sarah Riley Howard, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellant. Andrew Byerly Birge, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Sarah Riley Howard, Madelaine C. Lane, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellant. Andrew Byerly Birge, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

### OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. This appeal presents the issue of whether the district court had ancillary jurisdiction over Stacey Field's motion to expunge the record of her arrest. In 2000, Field was indicted on charges of receipt of stolen property and aiding and

abetting a bank robbery after the fact. After the district court granted Field's motion to suppress evidence obtained as a result of the FBI's violations of her constitutional rights, the government moved to dismiss the case. The district court granted that motion. After the district court dismissed the charges against Field, the FBI retained and occasionally disseminated the record of arrest or receipt on those charges, harming her employment opportunities. In 2011, Field filed a motion under her original criminal docket number to expunge the FBI's record of arrest. The district court denied that motion, concluding that it lacked jurisdiction to consider Field's motion. We affirm.

I.

On April 20, 2000, a group robbed a Michigan National Bank in Grand Rapids, Michigan. Witness identification of a getaway car led to the arrest of its driver, Toryano Babb. Further investigation led the FBI to Babb's girlfriend, Rene Magiera, who informed the FBI that Eliot Johnson was an associate of Babb and that Field was Johnson's girlfriend. The FBI located the apartment that Johnson and Field shared, but neither was home. The following day, after learning that Field may have been at her father's house, FBI agents proceeded there. Armed and wearing bullet-proof vests bearing the letters "F-B-I," agents approached the house and entered the front vestibule without a warrant. From the vestibule, FBI Agent Fleming saw Field behind a second door and later testified that he observed her place an object underneath her shirt. Field opened the second, interior door of the home. FBI Agent Fleming announced he was looking for Johnson and asked if he could enter. Field consented, and the agents entered the home. FBI Agent Fleming confronted Field about the concealed object, and Field produced a bag of money. Field was handcuffed, searched for weapons, unhandcuffed, and interviewed for three hours without being allowed to leave her seat. The FBI agents did not formally place Field under arrest, did not issue a *Miranda* warning, and the interview continued after Field expressed a desire for an attorney. At the conclusion of the interview, agents procured Field's consent to search the apartment she shared with Johnson. Field was not arrested at this time.

By June 2000, Field was indicted on two counts—receipt of stolen property, in violation of 18 U.S.C. § 2113, and accessory to bank robbery after the fact, in violation of 18 U.S.C. § 3 and § 2113.  On July 10, Field self-reported for her initial appearance and was released on bond.[1]

During the autumn of 2000, the government's case against Johnson and Field disintegrated.  Explaining it faced a *Bruton* problem, the government moved to dismiss the charges against Johnson without prejudice.  The district court granted this motion and dismissed all counts against Johnson.  Meanwhile, Field filed several motions—to sever her trial from her co-defendants, to suppress statements, and to suppress evidence.  At the conclusion of a two-day suppression hearing, the district court, ruling from the bench, granted Field's motion to suppress. In that ruling, the district court held that the FBI's warrantless entry into the vestibule of Field's father's house was illegal and suppressed evidence that resulted from the entry.  The district court also found that Field was in the custody of the FBI during her interrogation and suppressed the statements Field made after she requested an attorney and the evidence resulting from those suppressed statements.  At the conclusion of the hearing, the district court granted Field's motion for a separate trial.  The government then moved to dismiss without prejudice the charges against Field.  As a condition of the government's motion to dismiss, Field signed a statement acknowledging that no agent of the United States of America acted vexatiously, frivolously, or in bad faith in the investigation.  On December 5, the district court granted the government's motion and dismissed the indictment without prejudice.

Over ten years later, on August 3, 2011, Field submitted a letter *pro se* to the district court requesting that the court expunge her record of arrest.  Field alleged that the FBI's National Crime Information Center and its Criminal Justice Information Services maintain a file on her arrest.  That file shows that Field was arrested or received for possession of stolen bank funds and accessory after the fact.  According to Field, the arrest record is made known to her potential employers during background checks and, hence, is harming her employment opportunities. Field maintained that she received employment offers that were subsequently rescinded because of the arrest record.  Field stated in her letter that she had attempted to address the problem

---

[1]It is thus uncertain whether Field was ever actually arrested.  The record suggests that she self-surrendered into custody and was then released on bond.  But in any event the FBI record indicates that she was "arrested or received," so for the sake of convenience, we adopt her description of it as an arrest record.

directly with the FBI, but that the FBI refused to act until a court orders the record expunged. According to Field, the FBI informed her that she "should have been more careful regarding the company that [she] kept and to take it as a lesson learned." The district court treated Field's *pro se* letter as a motion for expungement, ordered the government to respond, and appointed counsel for Field. Her counsel filed a brief in support of her request for expungement, and the government filed a response.

On April 11, 2013, the district court entered an order denying Field's motion for expungement. Following *United States v. Lucido*, 612 F.3d 871 (6th Cir. 2010), the district court concluded that it lacked jurisdiction to consider Field's motion. The district court noted, however, that Field had a good faith basis for appeal because other circuits have left open the possibility that a federal court may have jurisdiction to consider a motion to expunge when the arrest was unconstitutional and the Sixth Circuit has yet to resolve that exact question. Field timely appealed.

## II.

We review *de novo* the district court's determination of jurisdiction. *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008). "A federal appellate court has an obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Id.* (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

## A.

Federal courts are tribunals of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They may only hear *cases* that invoke an independent basis of federal subject matter jurisdiction. Federal courts are also permitted to entertain *claims* or *incidental proceedings* that do not satisfy the requirements of an independent basis of subject matter jurisdiction. "Supplemental" or "pendant" jurisdiction applies to *claims* asserted in a pending federal-court case. "Ancillary" jurisdiction applies to related *proceedings* that are technically separate from the initial case that invoked federal subject-matter jurisdiction. *See generally* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*

§ 3523, at 154 (3d ed. 2008) ("Wright & Miller"). Whereas "supplemental" or "pendant" jurisdiction is treated under 28 U.S.C. § 1367, "ancillary" jurisdiction is governed by case law. *Kokkonen* provides the guiding framework:

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees . . . .

511 U.S. at 379−80 (internal citations omitted); *see also Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934) ("That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled.").

In limited circumstances, federal statutes expressly permit federal courts to expunge a criminal record. *See, e.g.*, 10 U.S.C. § 1565(e) (requiring expungement of DNA records when a court overturns a military conviction); 18 U.S.C. § 3607(c) (permitting expungement of criminal records in certain cases involving drug possession); 42 U.S.C. § 14132(d) (permitting expungement of FBI DNA records in certain cases when a conviction is overturned). In these circumstances, ancillary jurisdiction is not necessary to consider motions to expunge. 13 Wright & Miller § 3523.2, at 217.

Where there is no statutorily-grounded permission to expunge, however, federal courts may assert ancillary jurisdiction to expunge criminal records. Like our sister circuits, we have recognized such jurisdiction after *Kokkonen*'s guiding statement. *See, e.g., United States v. Carey*, 602 F.3d 738, 740 (6th Cir. 2010) ("An order on a motion to expunge a conviction is within the equitable jurisdiction of the federal district court."); *United States v. Robinson*, 79 F.3d 1149, at *1 (6th Cir. 1996) (Table); *see also United States v. Coloian*, 480 F.3d 47, 50 (1st Cir. 2007); *United States v. Rowlands*, 451 F.3d 173, 178 (3d Cir. 2006); *United States v. Meyer*, 439 F.3d 855, 861−62 (8th Cir. 2006); *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000); *see generally* Wright & Miller, § 3523.2, at 218 ("[T]he courts clearly have ancillary jurisdiction to expunge records of unlawful convictions or arrests.").

The ambit of ancillary jurisdiction to hear motions to expunge is limited, however. For example, federal courts lack ancillary jurisdiction over motions for expungement that are grounded on purely equitable considerations—*e.g.*, motions alleging that the movant has maintained good conduct and that the record of arrest harms the movant's employment opportunities. *Lucido*, 612 F.3d at 874; *see also Coloian*, 480 F.3d at 52 (holding no ancillary jurisdiction to order expungement based on petitioner's proffered equitable grounds); *Rowlands*, 451 F.3d at 178 (same); *Meyer*, 439 F.3d at 860 (same); *Sumner*, 226 F.3d at 1014−15 (same). Ancillary jurisdiction over such motions does not enable a court "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380. But where motions for expungement challenge an unconstitutional conviction or an illegal arrest or are otherwise based upon a constitutional claim, federal courts may have jurisdiction to consider the motion. *See Carey*, 602 F.3d at 739 (holding the district court had jurisdiction "because Carey raised constitutional claims in support of his Motion for Expungment"); *Robinson*, 79 F.3d 1149, at *2 ("[F]ederal courts have most readily invoked the expungement power with respect to illegal convictions, convictions under statutes later deemed unconstitutional, and convictions obtained through governmental misconduct."); *see also Coloian*, 480 F.3d at 507 (recognizing jurisdiction "'to expunge records of unconstitutional convictions'" (quoting *Reyes v. Supervisor of the DEA*, 834 F.2d 1093, 1098 (1st Cir. 1987))); *Rowlands*, 451 F.3d at 178 ("[O]ur precedent clearly establishes that we have jurisdiction over petitions for expungement only when the validity of the underlying criminal proceeding is challenged."); *Meyer*, 439 F.3d at 861−62 (recognizing that a district court "may have ancillary jurisdiction to [expunge] in extraordinary cases to preserve its ability to function successfully by enabling it to correct an injustice caused by an illegal or invalid criminal proceeding"); *Sumner*, 226 F.3d at 1014 ("We agree with our sister circuits that district courts possess ancillary jurisdiction to expunge criminal records . . . a district court's ancillary jurisdiction is limited to expunging the record of an unlawful arrest or conviction, or to correcting a clerical error."). In these cases, ancillary jurisdiction over motions to expunge may enable a court to "vindicate its authority[] and effectuate its decrees." *Kokkonen*, 511 U.S. at 380.

We share the view of our sister circuits that, post-*Kokkonen*, federal courts lack ancillary jurisdiction over motions for expungement based on purely equitable considerations, yet retain

ancillary jurisdiction over motions challenging an unconstitutional conviction. We assume for purposes of argument in this case that such ancillary jurisdiction may extend to an illegal arrest. *See Sumner*, 226 F.3d at 1014; *United States v. McLeod*, 385 F. 2d 734, 750 (5th Cir. 1967). But even where a motion for expungement not only raises equitable grounds but also challenges an unconstitutional conviction or illegal arrest, the assertion of ancillary jurisdiction must enable the court "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.*

B.

In her motion for expungement, Field argued that her arrest was the sole and direct result of the FBI's unconstitutional activity. The district court dismissed Field's motion, holding that it lacked jurisdiction under *Lucido*. We do not rely upon that analysis, because even if the district court could exercise ancillary jurisdiction to expunge an executive branch arrest record in some cases, it could not do so in this case.

We assume that federal courts may assert ancillary jurisdiction to consider motions for expungement raising constitutional claims or challenging an unconstitutional conviction or an illegal arrest. *See Carey*, 602 F.3d at 739−740; *Robinson*, 79 F.3d 1149, at *2; *see also Coloian*, 480 F.3d at 507; *Rowlands*, 451 F.3d at 178; *Meyer*, 439 F.3d at 861−62; *Sumner*, 226 F.3d at 1014. Field alleged that her arrest was the result of unconstitutional government conduct. The assertion of ancillary jurisdiction over Field's motion is in any event only available for the district court to manage the proceedings, vindicate the authority, or effectuate the decrees of the district court that granted Field the suppression remedy and dismissed her indictment. *See Kokkonen*, 511 U.S. at 380. It does not.

Ancillary jurisdiction over Field's motion to expunge her record of arrest does not enable the district court to vindicate its authority or effectuate its decrees because the district court did not hold that Field was illegally arrested. The fact that Field was received or arrested was not the subject of any district court attention. What the district court held was that the FBI illegally entered Field's father's house, based on a finding that the vestibule was in the curtilage. The district court suppressed evidence the government obtained as a result of the illegal entry as tainted fruit of the poisonous tree. The district court also suppressed the statements Field made during the custodial interrogation after she requested a lawyer and the evidence resulting

therefrom.  But the record that Field seeks to have expunged is an FBI record having no relation to any district court order.  Therefore, the assertion of ancillary jurisdiction over Field's motion to expunge is not necessary to vindicate any district court ruling.  *Cf. Lucido*, 612 F.3d at 875; *Rowlands*, 451 F.3d at 178; *Meyer*, 439 F.3d at 861−62; *Sumner*, 226 F.3d at 1014.

Nor is ancillary jurisdiction to consider Field's motion to expunge her record of arrest necessary to vindicate the district court's authority or to effectuate its decrees.  Here, the suppression remedy fully effectuated the district court's rulings that the FBI agents violated Field's constitutional rights through the illegal entry and during the custodial interrogation.  It is not necessary that the district court now consider Field's expungement motion in order to vindicate its previous holdings or to effectuate the suppression remedy.

III.

For the foregoing reasons, we affirm the district court's denial of Field's motion to expunge the record of her arrest.