**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued: April 7, 2016          Decided: August 11, 2016)

Docket No. 15-1967-cr

_____

JANE DOE, 14 MC 1412,

*Petitioner-Appellee*,

v.

UNITED STATES OF AMERICA,

*Respondent-Appellant*.

_____

Before:

POOLER, LIVINGSTON, and LOHIER, *Circuit Judges.*

In this appeal we address whether a district court has ancillary jurisdiction to expunge all records of a valid conviction. In 2001 petitioner-appellee Jane Doe was convicted in the United States District Court for the Eastern District of New York (Gleeson, *J.*) of health care fraud and was sentenced principally to five years' probation. In 2014 Doe moved to expunge all records of her conviction because it prevented her from getting or keeping a job as a home health aide. Relying on this Court's decision in United States v. Schnitzer, 567 F.2d 536 (2d Cir. 1977), the District Court held that it had jurisdiction to entertain Doe's motion and granted it. Because we conclude that Schnitzer applies only to arrest records, we hold that the District Court lacked jurisdiction to consider

1

Doe's motion. We therefore **VACATE** and **REMAND** with instructions to dismiss Doe's motion for lack of jurisdiction. Judge LIVINGSTON concurs in a separate opinion.

NOAM BIALE (Michael Tremonte, Emily Burgess, Sher Tremonte LLP, New York, NY; Bernard H. Udell, Brooklyn, NY, *on the brief*), Sher Tremonte LLP, New York, NY, *for* Petitioner-Appellee.

BRADLEY T. KING (David C. James, *on the brief*), Assistant United States Attorneys, *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Gabriel P. Harvis, Alex Lesman, Harvis & Fett LLP, New York, NY; *for amicus curiae* The Association of the Bar of the City of New York.

Leigh A. Krahenbuhl, Jones Day, Chicago, IL; Lawrence D. Rosenberg, Paul V. Lettow, Jones Day, Washington, DC; *for amicus curiae* Collateral Consequences Resource Center, Inc.

Judith Whiting (Estee Konor, Emily Hoffman, *on the brief*), The Community Service Society of New York, New York, NY; Deborah H. Karpatkin, New York, NY; *for amici curiae* The Community Service Society of New York, National Employment Lawyers Association of New York, The Bronx Defenders, Center for Community Alternatives, The Fortune Society, The Legal Aid Society, Legal Action Center, MFY Legal Services, National Employment Law Project, Open Hands Legal Services, Sargent Shriver National Center on Poverty Law, Urban Justice Center, Youth Represent.

Frederick M. Oberlander, Montauk, NY; Richard E. Lerner, New York, NY; *for amicus curiae* Frontiers of Freedom Institute, Inc.

Joel B. Rudin, New York, NY; Harry Sandick, Joshua A. Goldberg, Juvaria S. Khan, Patterson Belknap Webb & Tyler LLP, New York, NY; *for*

*amici curiae* The New York Council of Defense Lawyers & The National Association of Criminal Defense Lawyers.

LOHIER, *Circuit Judge*:

In this appeal we address whether a district court has ancillary jurisdiction to expunge all records of a valid conviction. The case arises from Jane Doe's health care fraud conviction in 2001 after a jury trial in the United States District Court for the Eastern District of New York (Gleeson, J.). The District Court sentenced Doe principally to five years' probation. In 2014, seven years after her term of probation ended, Doe moved to have her record of conviction expunged because her conviction prevented her from getting or keeping a job as a home health aide. Relying on United States v. Schnitzer, 567 F.2d 536 (2d Cir. 1977) and Kokkonen v. Guardian Life Insurance Company of America, 511 U.S. 375 (1994), the District Court held in a decision and order dated May 21, 2015 that it had ancillary jurisdiction to consider and grant Doe's motion. It then directed the Government to seal all hard copy records and to delete all electronic records of Doe's conviction. The Government appeals that decision as well as a related order.

We hold that the District Court lacked jurisdiction to consider Doe's

motion to expunge records of a valid conviction. We therefore **VACATE**

and **REMAND** with instructions to dismiss Doe's motion for lack of

jurisdiction.

## BACKGROUND

To resolve this appeal, we accept as true the following facts taken

from the District Court's opinion and order granting Doe's expungement

motion. See Doe v. United States, 110 F. Supp. 3d 448 (E.D.N.Y. 2015).

In 1997 Doe, a single mother with no prior criminal history, worked

as a home health aide but struggled to pay her rent. Id. at 449-50. That

year Doe decided to join an automobile insurance fraud scheme in which

she posed as a passenger in a staged car accident. As part of the scheme

she feigned injury and recovered $2,500 from a civil claim related to the

accident. Id. at 449-50. In 2001 a jury convicted Doe of "knowingly and

willfully" participating in a "scheme . . . to defraud any health care benefit

program" in violation of 18 U.S.C. § 1347. Id. at 450; 18 U.S.C. § 1347(a)(1).

On March 25, 2002, the District Court imposed a sentence of five years'

probation and ten months' home detention, as well as a restitution order of

$46,701.  <u>Doe</u>, 110 F. Supp. 3d at 450.

By 2008 Doe had completed her term of probation.  But she could not keep a job in the health care field, the only field in which she sought work.  Doe was sometimes hired as a home health worker by employers who did not initially ask whether she had been convicted of a crime.  But she was fired when the employers eventually conducted a background check that revealed her conviction.  <u>Id.</u> at 451-52.

On October 30, 2014, Doe filed a <u>pro se</u> motion asking the District Court to expunge her conviction "because of the undue hardship it has created for her in getting — and especially keeping — jobs."  <u>Id.</u> at 448-49.  Doe had by all accounts led an exemplary life since her conviction thirteen years earlier.  <u>Id.</u> at 455.

Relying first on <u>Schnitzer</u>, 567 F.2d at 539, the District Court determined that it had ancillary jurisdiction to consider Doe's motion.  <u>Doe</u>, 110 F. Supp. 3d at 454 & n.16; <u>see</u> <u>Schnitzer</u>, 567 F.2d at 538-39 (holding that "[a] court, sitting in a criminal prosecution, has ancillary jurisdiction to issue protective orders regarding dissemination of arrest

records," and that "expungement . . . usually is granted only in extreme circumstances" (quotation marks omitted)).  In doing so, the District Court acknowledged that the Supreme Court in Kokkonen had "limited ancillary jurisdiction of collateral proceedings to instances where it is necessary '(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent,' and '(2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'"  110 F. Supp. 3d at 454 n.16 (quoting Kokkonen, 511 U.S. at 379-80).  But the District Court determined that Doe's motion satisfied both of these categories.  Id.

First, the District Court explained, the motion's "sole focus is the record of the conviction that occurred in this case, and the exercise of discretion it calls for is informed by, inter alia, the facts underlying the conviction and sentence and the extensive factual record created while Doe was under this Court's supervision for five years."  Id.  Second, the court pointed out, "few things could be more essential to 'the conduct of federal-court business' than the appropriateness of expunging the public records that business creates."  Id. (quoting Kokkonen, 511 U.S. at 381).

The District Court also cited three reasons why the consequences of Doe's conviction were "extreme" enough to warrant expungement of her criminal record. First, Doe's offense of conviction "is distant in time and nature from [her] present life," and "[s]he has not even been re-arrested, let alone convicted, in all th[e] years" since her conviction. Id. at 455 (quotation marks omitted). Second, Doe's "criminal record has had a dramatic adverse impact on her ability to work," as "[s]he has been terminated from half a dozen [home health aide] jobs because of the record of her conviction" – a difficulty that was "compounded" by the fact that Doe is over 50 years old and black. Id.; see also id. at 449, 452. Third, "[t]here was no specter at the time that she had used her training as a home health aide to help commit or cover up her crime," and "[t]here is no specter now that she poses a heightened risk to prospective employers in the health care field." Id. at 457.

For these reasons, the District Court granted Doe's motion and ordered "that the government's arrest and conviction records, and any other documents relating to this case, be placed in a separate storage facility, and that any electronic copies of these records or documents and

references to them be deleted from the government's databases, electronic filing systems, and public record."[1] Id. at 458.

This appeal followed.

**DISCUSSION**

"Federal courts . . . are courts of limited jurisdiction." Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001). "Even where the parties are satisfied to present their disputes to the federal courts, the parties cannot confer subject matter jurisdiction where the Constitution and Congress have not." Id. We conclude that the District Court did not have jurisdiction over Doe's motion pursuant to 18 U.S.C. § 3231 because Doe's conviction was valid and the underlying criminal case had long since concluded.

Citing the Federal Rules of Criminal Procedure, Doe argues that federal courts broadly retain subject matter jurisdiction over criminal cases even after judgment has been entered. We agree that certain motions may

---

[1] Although Doe's petition was termed a motion to "expunge" her criminal conviction, we agree with Doe and certain amici that the term "expunge" does not accurately describe what the District Court ultimately ordered. In effect, the District Court ordered the records of Doe's conviction sealed rather than expunged or destroyed. Consistent with the parties' briefs, however, we use the term "expunge" or "expungement" to resolve the question presented.

be raised after the entry of judgment in criminal cases. We also recognize that the time limits for bringing those motions are often non-jurisdictional. But we are not persuaded that the District Court had subject matter jurisdiction to decide Doe's motion in this case. The relevant Rules of Criminal Procedure all provide for limited jurisdiction over specified types of post-judgment motions. See, e.g., Fed. R. Crim. P. 35(b) (allowing motions to reduce a sentence based on substantial assistance to the government). None of these rules remotely suggests, however, that district courts retain jurisdiction over any type of motion years after a criminal case has concluded.

Nor are we persuaded that the District Court had ancillary jurisdiction to consider Doe's motion. "The boundaries of ancillary jurisdiction are not easily defined and the cases addressing it are hardly a model of clarity," but "[a]t its heart, ancillary jurisdiction is aimed at enabling a court to administer justice within the scope of its jurisdiction." Garcia v. Teitler, 443 F.3d 202, 208 (2d Cir. 2006) (emphasis added) (quotation marks omitted). "Without the power to deal with issues ancillary or incidental to the main action, courts would be unable to

9

effectively dispose of the principal case nor do complete justice in the premises." Id. (quotation marks omitted).

With that in mind, we turn briefly to Schnitzer, on which the District Court relied to decide that it had ancillary jurisdiction to grant Doe's motion. In Schnitzer, the defendant filed a motion to expunge his arrest record following an order of dismissal in his criminal case. After the district court denied his motion, the defendant argued on appeal that the district court lacked jurisdiction to decide his motion in the first place. We rejected the defendant's argument. We held that "[a] court, sitting in a criminal prosecution, has ancillary jurisdiction to issue protective orders regarding dissemination of arrest records." 567 F.2d at 538.

Although Schnitzer involved an arrest record, the District Court was not alone in thinking that it extends to records of a valid conviction. See United States v. Mitchell, 683 F. Supp. 2d 427, 430 n.10 (E.D. Va. 2010). But we think it is clear that Schnitzer applies only to arrest records after an order of dismissal. See Schnitzer, 567 F.2d at 538 (holding that "[a] court, sitting in a criminal prosecution, has ancillary jurisdiction to issue protective orders regarding dissemination of arrest records" (emphasis

added)); id. at 539 (noting that "[n]o federal statute provides for the expungement of an arrest record," but that "expungement lies within the equitable discretion of the court" (emphasis added)). Our reading is supported by the fact that Schnitzer itself relied on decisions that were confined to the expungement of arrest records following dismissal of a criminal case. See Morrow v. District of Columbia, 417 F.2d 728, 741 (D.C. Cir. 1969) (holding that the district court's exercise of ancillary jurisdiction over a motion to expunge arrest records was proper); United States v. Linn, 513 F.2d 925, 927 (10th Cir. 1975) (same); United States v. Rosen, 343 F. Supp. 804, 806 (S.D.N.Y. 1972) (exercising jurisdiction over a motion to expunge arrest records); United States v. Seasholtz, 376 F. Supp. 1288, 1289 (N.D. Okla. 1974) (same). In Morrow, for example, the D.C. Circuit explained that "an order regarding dissemination of arrest records in a case dismissed by the court is reasonably necessary to give complete effect to the court's order of dismissal." 417 F.2d at 741. We therefore conclude that Schnitzer is confined to the expungement of arrest records following a district court's order of dismissal and as such does not resolve whether the

District Court had ancillary jurisdiction to expunge records of a valid conviction in this case. [2]

The District Court also cited <u>Kokkonen</u> in support of its decision to exercise ancillary jurisdiction over Doe's motion. In <u>Kokkonen</u>, the Supreme Court determined that a district court had improperly exercised ancillary jurisdiction to enforce a settlement agreement in a civil suit that it had previously closed without expressly retaining jurisdiction to enforce the agreement. As the District Court recognized, the Supreme Court instructed that ancillary jurisdiction may be exercised "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." <u>Kokkonen</u>, 511 U.S. at 379-80. Given the facts in <u>Kokkonen</u>, the Court held that enforcing a settlement agreement upon which the dismissal was

---

[2] Although it is unnecessary for us to decide the issue today, we do not view the Supreme Court's decision in <u>Kokkonen</u> as necessarily abrogating <u>Schnitzer</u>. To the contrary, exercising ancillary jurisdiction to expunge (seal, delete) arrest records following a district court's order of dismissal appears to comport with <u>Kokkonen</u> (insofar as it applies to criminal cases) because it may serve to "effectuate [that] decree[]." <u>Kokkonen</u>, 511 U.S. at 380.

predicated fell into neither category. The Court explained that "the facts underlying respondent's dismissed claim . . . and those underlying its claim for breach of settlement agreement have nothing to do with each other," and "the only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." Id. at 380.

Relying on Kokkonen, Doe argues that the District Court's exercise of ancillary jurisdiction served to "vindicate its sentencing decree" issued in 2002. Appellee's Br. 27. The District Court phrased the same point slightly differently by characterizing its original decree as having "sentenced [Doe] to five years of probation supervision, not to a lifetime of unemployment." Doe, 110 F. Supp. 3d at 457.

We reject Doe's argument. The District Court's sentence had long ago concluded and its decrees long since expired by the time Doe filed her motion. Under those circumstances, expunging a record of conviction on equitable grounds is entirely unnecessary to "manage [a court's] proceedings, vindicate its authority, [or] effectuate its decrees." Kokkonen, 511 U.S. at 380. "Expungement of a criminal record solely on

13

equitable grounds, such as to reward a defendant's rehabilitation and commendable post-conviction conduct, does not serve any of th[e] goals" identified in Kokkonen's second prong. Sumner, 226 F.3d at 1014; see also United States v. Lucido, 612 F.3d 871, 875 (6th Cir. 2010) (holding that a district court lacked jurisdiction to consider a motion to expunge records of a valid indictment and later acquittal because "[t]hese criminal cases have long since been resolved, and there is nothing left to manage, vindicate or effectuate").

Doe alternatively argues that the District Court's supervision of her criminal proceedings (including the sentence) and its subsequent handling of her motion to expunge her conviction on equitable grounds were "factually interdependent" under Kokkonen, 511 U.S. at 379. We agree that the District Court's review of Doe's motion may have depended in part on facts developed in her prior criminal proceeding. See Doe, 110 F. Supp. 3d at 454 n.16 ("[T]he exercise of discretion [that Doe's expungement motion] calls for is informed by, inter alia, the facts underlying the conviction and sentence and the extensive factual record created while Doe was under this Court's supervision for five years."). But we fail to see how

these two analytically and temporally distinct proceedings can be

described as "factually interdependent."

To the contrary, a motion to expunge records of a valid conviction

on equitable grounds will ordinarily be premised on events that are

unrelated to the sentencing and that transpire long after the conviction

itself. For example, in this case the facts underlying the District Court's

sentencing were clearly independent of the facts developed in Doe's

motion filed years later. Conversely, the District Court granted Doe's

motion based on facts and events (her repeated efforts to obtain

employment) that transpired years after her sentencing and term of

probation. Id. at 452, 456-57; see United States v. Coloian, 480 F.3d 47, 52

(1st Cir. 2007) (holding that "[a]s in Kokkonen, the original claims brought

before the district court in this [criminal] case have nothing to do with the

equitable grounds upon which Coloian seeks the expungement of his

criminal record"). And the collateral employment consequences Doe faces

today arise from the very fact of her conviction, not from the District

Court's sentencing proceedings or Doe's probationary term. For these

reasons, we conclude that Doe's original sentencing and her motion to

expunge are not "mutually dependent." Merriam-Webster Dictionary (3d ed.) (defining "interdependent").

Finally, we note that Congress has previously authorized district courts to expunge lawful convictions under certain limited circumstances not present in this case. See 18 U.S.C. § 3607(c) (upon the application of certain drug offenders who have been placed on prejudgment probation and were less than twenty-one years old at the time of the offense, "the court shall enter an expungement order" expunging all public "references to his arrest for the offense, the institution of criminal proceedings against him, and the results thereof"); 18 U.S.C. § 5021(b) (repealed 1984) (providing that after sentencing a youth offender to probation, a district court "may thereafter, in its discretion, unconditionally discharge such youth offender from probation . . . which discharge shall automatically set aside the conviction"). We think it significant (though not dispositive) that Congress failed to provide for jurisdiction under the circumstances that exist here.

In summary, we hold that the District Court's exercise of ancillary jurisdiction in this case served neither of the goals identified in Kokkonen.

Our holding is in accord with that of every other sister Circuit to have addressed the issue since Kokkonen.  See United States v. Field, 756 F.3d 911, 915-16 (6th Cir. 2014); Lucido, 612 F.3d at 875-76; Coloian, 480 F.3d at 52; United States v. Meyer, 439 F.3d 855, 859-60 (8th Cir. 2006); United States v. Dunegan, 251 F.3d 477, 480 (3d Cir. 2001); Sumner, 226 F.3d at 1014-15.[3]

The unfortunate consequences of Doe's conviction compel us to offer a few additional observations.  First, our holding that the District Court had no authority to expunge the records of a valid conviction in this case says nothing about Congress's ability to provide for jurisdiction in similar cases in the future.  As described above, Congress has done so in other contexts.  It might consider doing so again for certain offenders who, like Doe, want and deserve to have their criminal convictions expunged after a period of successful rehabilitation.  Second, only a few months ago (while this appeal was pending), the Attorney General of the United States

---

[3] At oral argument, Doe waived any argument in support of sealing only the judicial records of conviction in her case, rather than all available records retained by the Government.  See Oral Arg. Tr. 20; cf. Gambale v. Deutsche Bank AG, 377 F.3d 133, 141-42 (2d Cir. 2004).

17

recognized and aptly described the unfortunate lifelong toll that these

convictions often impose on low-level criminal offenders:

> Too often, Americans who have paid their debt to society
> leave prison only to find that they continue to be
> punished for past mistakes.  They might discover that
> they are ineligible for student loans, putting an education
> out of reach.  They might struggle to get a driver's
> license, making employment difficult to find and sustain.
> Landlords might deny them housing because of their
> criminal records – an unfortunately common practice.
> They might even find that they are not allowed to vote
> based on misguided state laws that prevent returning
> citizens from taking part in civic life.

Attorney General Loretta E. Lynch Releases Roadmap to Reentry: The

Justice Department's Vision to Reduce Recidivism through Federal

Reentry Reforms (Apr. 25, 2016),

https://www.justice.gov/opa/speech/attorney-general-loretta-e-lynch-

delivers-remarks-national-reentry-week-event.  "[T]oo often," the Attorney

General said, "the way that our society treats Americans who have come

into contact with the criminal justice system . . . turns too many terms of

incarceration into what is effectively a life sentence."  Id.

**CONCLUSION**

For the foregoing reasons, we **VACATE** the District Court's May 21 and 22, 2015 orders and **REMAND** with instructions to dismiss Doe's motion for lack of jurisdiction.

LIVINGSTON, *Circuit Judge*, concurring:

I concur fully in the majority opinion, with two exceptions.  First, I do not join footnote two, addressing whether *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), abrogated our decision in *United States v. Schnitzer*, 567 F.2d 536 (2d Cir. 1977).  The majority implies, in dicta, that *Schnitzer*'s jurisdictional holding may have survived *Kokkonen*.  The weight of authority from other circuits appears to the contrary.[1]  Regardless of the proper resolution

---

[1] *See United States v. Lucido*, 612 F.3d 871, 875-76 (6th Cir. 2010) (holding that "federal courts lack ancillary jurisdiction to consider expungement motions directed to the executive branch," and in the process abrogating a prior Sixth Circuit precedent to the contrary on the basis that it "c[ould not] be reconciled with *Kokkonen*"); *United States v. Coloian*, 480 F.3d 47, 51-52 (1st Cir. 2007) (holding that federal jurisdiction does not "provide[] ancillary jurisdiction over equitable orders to expunge because such orders do not fit within *Kokkonen*'s purposes for ancillary jurisdiction," and distinguishing *Schnitzer* on the ground that it "predate[s] *Kokkonen* . . . which raises questions as to [its] continued viability"); *United States v. Meyer*, 439 F.3d 855, 859-601 (8th Cir. 2006) (though factually addressing only expungement of a conviction (rather than an arrest record), stating that "[i]n light of the Supreme Court's instruction narrowing the scope of ancillary jurisdiction in *Kokkonen* . . . , we are convinced that a district court does not have ancillary jurisdiction to expunge a criminal record based solely on equitable grounds"); *United States v. Dunegan*, 251 F.3d 477, 479-80 (3d Cir. 2001) (citing *Kokkonen* for the proposition that "in recent years [the Supreme Court] has held that ancillary jurisdiction is much more limited," and relying on *Kokkonen* to hold that "in the absence of any applicable statute enacted by Congress, or an allegation that the criminal proceedings were invalid or illegal, a District Court does not have the jurisdiction to expunge a criminal record, even when ending in an acquittal"); *United States v. Sumner*, 226 F.3d 1005, 1015 (9th Cir. 2000) (relying on *Kokkonen* to hold "that a district court does not have ancillary jurisdiction in a criminal case to expunge an arrest or conviction record where the sole basis alleged by the defendant is that he or she seeks equitable relief"); *cf. Lucido*, 612 F.3d at 876 (listing cases, including *Schnitzer*, that hold that

1

of this question, having found that *Schnitzer* is inapposite to this case, I would not further opine on its continued validity.

Second, I do not join the majority's discussion of the merits of affording courts jurisdiction to expunge criminal convictions, which begins on page 17. I am sympathetic to the concerns the majority raises in this dicta, but I note that there are other significant considerations — including the value of governmental and judicial transparency — that must also be assessed in the context of this policy debate. Having concluded that we lack jurisdiction to reach the merits of this case, I would not suggest to Congress how it might go about assessing and weighing these equities.

---

federal courts have jurisdiction to equitably expunge particular criminal records in at least some circumstances, but observing that such authority "comes from decisions that predate *Kokkonen* . . . or that never discuss or even cite [it]").

2